[No. 61906-9. En Banc.]
Argued January 16, 1996. Decided August 8, 1996.
THE STATE OF WASHINGTON, *Respondent*, v. GEORGE W. MANUSSIER, *Appellant*.

*Raymond H. Thoenig* of *Department of Assigned Counsel;* and *Kyron J. Huigens,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Barbara L. Corey-Boulet* and *Michael R. Johnson, Deputies,* for respondent.

SMITH, J. — Appellant George W. Manussier appeals his mandatory sentence of life imprisonment without possibility of parole under the "three strikes law" of RCW 9.94A.120(4) following his plea of "guilty" in the Pierce County Superior Court to second degree robbery. He challenges on various state and federal constitutional grounds the validity of the "three strikes law," enacted by the Legislature in 1994 after approval of Initiative 593 by the people of Washington in 1993. We affirm.

## QUESTIONS PRESENTED

The questions presented in this case are whether Initiative 593 (1) was adopted in violation of article II, section 37 of the Washington Constitution; (2) violates Article I, Section 10 of the United States Constitution and article I, section 23 of the Washington Constitution as a bill of attainder; (3) violates the separation of powers doctrine; (4)

violates Article IV, Section 4 of the United States Constitution, which guarantees a republican form of government; (5) violates either the federal Equal Protection Clause, or its counterpart, the privileges and immunities clause of article I, section 12 of the Washington Constitution; (6) violates the Eighth Amendment of the United States Constitution and the cruel punishment clause of article I, section 14 of the Washington Constitution; and (7) violates substantive or procedural due process.

## STATEMENT OF FACTS

Initiative 593, commonly referred to as the "three strikes law," was adopted by the voters of this state in November 1993 under the ballot title, "Shall criminals who are convicted of 'most serious offenses' on three occasions be sentenced to life in prison without parole?"[1] The initiative, which took effect on December 2, 1993,[2] amended RCW 9.94A.120 by adding a new subsection which requires trial courts to sentence "persistent offenders" to life imprisonment without possibility of parole.[3] A "persistent offender" is defined as one convicted of any felony considered a "most serious offense" under RCW 9.94A.030(21) and who has, in addition, been twice convicted of an offense falling under that category.[4]

A "most serious offense" includes the following: (a) any Class A felony; (b) any Class B felony with a finding of "sexual motivation" as defined by statute; (c) any felony with a deadly weapon finding; and (d) seventeen other named offenses.[5] The statute's mandatory life sentence ap-

---

[1] 1993 Voter's Pamphlet at 4.

[2] LAWS OF 1994, ch. 1.

[3] RCW 9.94A.120(4), legislatively identified as "Initiative 593."

[4] RCW 9.94A.030(25).

[5] RCW 9.94A.030(21)(a)-(u).

plies to any persistent offender "notwithstanding the maximum sentence under any other law."[6]

On April 12, 1994, Appellant Manussier entered a bank in Fife, Washington, handed a teller a note demanding money, and claimed he was armed with a gun and would shoot. After the teller complied with his demand, appellant fled on foot to a nearby restaurant, where he was arrested with the money taken from the bank in his possession.

On April 15, 1994, the Pierce County Prosecuting Attorney charged appellant by information with first degree robbery, a class A felony, in the Pierce County Superior Court.[7] The State also filed a "Most Serious Offense Notice," informing appellant he would be classified as a persistent offender and sentenced to life imprisonment without parole under RCW 9.94A.120(4) if he had twice previously been convicted of most serious offenses.[8] Because he had twice been convicted of first degree robbery in 1985 and 1989,[9] appellant was subject to the "three strikes law" upon his conviction on the 1994 charge.

In the Superior Court, appellant asked the court to declare Initiative 593 unconstitutional on several state and federal constitutional grounds.[10] He also argued, in the alternative, that Initiative 593 reinstated the former habitual criminal statute,[11] thus entitling him to certain "procedural protections developed under Washington case law."[12] More specifically, appellant claimed he had a right to a jury trial on the issue of prior convictions, and that

---

[6]RCW 9.94A.120(4).

[7]Clerk's Papers at 4-5.

[8]*Id.* at 1. RCW 9.94A.120(4) is commonly referred to as the "three strikes law" or Initiative 593. Appellant was convicted under the 1994 version of RCW 9.94A.030. That version is cited throughout this opinion.

[9]See Exhibit 1 (1989 "guilty" plea) and Exhibit 2 (1985 judgment).

[10]See Clerk's Papers at 120-21.

[11]RCW 9.92.090

[12]Clerk's Papers at 120-21.

the State was required to prove the fact of his convictions beyond a reasonable doubt.[13] The Pierce County Superior Court rejected both arguments and denied appellant's motion by order dated June 24, 1994.[14] The court, the Honorable Arthur W. Verharen, noted in the order that it would not "impose any additional due process requirements upon the State beyond those which are provided for in the Sentencing Reform Act, RCW 9.94A.010 et seq."[15]

On June 27, 1994, appellant pleaded "guilty" to second degree robbery,[16] which qualifies as a "most serious offense" under Initiative 593.[17] Although he did not acknowledge his two prior robbery convictions at the time of his plea, on that date he signed a statement on plea of guilty acknowledging that the penalty for this third conviction was a mandatory sentence of life imprisonment without parole.[18] Second degree robbery would otherwise carry a standard range sentence of 15 to 20 months' imprisonment.[19]

At appellant's sentencing hearing, the State offered as proof of his criminal history (1) a certified copy of the verdict form in the 1985 robbery conviction, a certified copy of the judgment and sentence from that case, and the Court of Appeals' affirmance of the conviction; and (2) a copy of the Statement of Defendant on Plea of Guilty in the 1989 robbery case, the warrant of commitment in that case, and a certified copy of the 1989 judgment and sentence.[20] The State also offered testimony of Washington State Community Corrections Officer Thomas Patdonea,

[13]*Id.* at 112-17.

[14]*Id.* at 134-35.

[15]*Id.* at 135.

[16]*Id.* at 136-40.

[17]RCW 9.94A.030(21)(o) (1994 version).

[18]Clerk's Papers at 136-40.

[19]RCW 9.94A.310-320.

[20]Verbatim Report of Proceedings, June 30, 1994, at 5-7.

who stated he knew appellant from the Department of Corrections and that appellant's department file confirmed two prior first degree robbery convictions.[21] Further testimony was offered by David Cotton, forensic investigation supervisor, Pierce County Sheriff's Department. Mr. Cotton testified he compared a set of fingerprints taken from appellant during booking for the 1994 robbery conviction with prints he took from appellant in court that day, prints on the 1985 judgment, and prints on the 1989 warrant of commitment.[22] He concluded that all prints came from the same person.[23]

Finding that appellant had been convicted of first degree robbery in 1985 and 1989, the trial court concluded he was a "persistent offender" as defined in RCW 9.94A.030(25).[24] The court, the Honorable Bruce W. Cohoe, then under RCW 9.94A.120(4) sentenced him to life imprisonment without possibility of parole on June 30, 1994,[25] noting that the court did not have discretion to do otherwise.[26] Appellant then timely filed this appeal.

## DISCUSSION

### WASHINGTON STATE CONSTITUTION ARTICLE II, SECTION 37

Article II, section 37 of the Washington Constitution declares that "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." Appellant claims Initiative 593 violates this constitutional provision because it amends RCW 9A.20.021, the section of the crim-

---

[21]*Id.* at 11-13.

[22]*Id.* at 20-21.

[23]*Id.*

[24]Clerk's Papers at 157-60.

[25]*Id.* at 163-70.

[26]*Id.* at 159-60.

inal code providing maximum penalties for all offenses, without referring to the statute.[27]

■ While we have not previously ruled on this point, we now conclude that article II, section 37 applies to initiative measures, as well as to acts adopted by the Legislature. In *Washington Federation of State Employees v. State*, we stated that:

[A]mendment VII [to the state constitution], which established the initiative right, was an amendment to Const. art. II, which concerns legislative authority, and therefore the provisions of article II, including section 19, are applicable to both the legislative and initiative processes.[28]

Although in that case we were principally concerned with application of article II, section 19 to the initiative process, our conclusion nevertheless logically extends to section 37 as well. Because we conclude that article II, section 37 applies to Initiative 593, the question now becomes whether the initiative complies with that provision.

■ This court has set out a two-part conjunctive test for determining whether a law violates section 37: (1) "Is the new enactment such a complete act that the scope of the rights or duties created or affected by the legislative action can be determined without referring to any other statute or enactment?"; and (2) "Would a straightforward determination of the scope of rights or duties under the existing statutes be rendered erroneous by the new enactment?"[29] Initiative 593 satisfies this test, at least for application of section 37 of article II.

■■ Applying part one of the test, we conclude Initiative 593 is a complete act capable of being understood without reference to statutes not set forth in its provi-

---

[27]Appellant's Br. at 8.

[28]*Washington Fed'n of State Employees v. State*, 127 Wn.2d 544, 551-52 901 P.2d 1028 (August 31, 1995).

[29]*Washington Education Ass'n v. State*, 97 Wn.2d 899, 903, 652 P.2d 1347 (1982) (citations omitted).

sions. The initiative addresses the limited subject of sentencing for "persistent offenders." Every statute amended was set out in full in the initiative.[30] By defining "persistent offender" in RCW 9.94A.030(25) and mandating in RCW 9.94A.120(4) a life sentence without parole for such offenders "notwithstanding the maximum sentence under any other law," the initiative completely addresses the scope of the rights affected. There is no need to go beyond the wording of the initiative to determine the penalty for engaging in certain delineated recidivist conduct because the law states its applicability is independent of maximum sentences imposed by any other law.[31]

Part two of the test is not so easily satisfied. The initiative does affect the law on maximum sentences under RCW 9A.20.021. Under that statute, the maximum penalty for a class A felony is life imprisonment, while the maximum penalty for a class B felony is "a term of ten years."[32] By mandating a life sentence for persistent offenders, however, Initiative 593 has the effect of increasing from ten years to life imprisonment without parole the maximum sentence for all "most serious" class B felonies.[33]

Notwithstanding this effect on maximum sentences, Initiative 593 still satisfies the second part of the test. This court has "found constitutional the modification of existing law by a complete statute."[34] A complete act, not revisory in character, is not rendered unconstitutional by article II, section 37, even though it may by implication

---

[30]See Laws of 1994, ch. 1, §§ 2, 3 (setting out in full amended statutes RCW 9.94A.030 and RCW 9.94A.120).

[31]We have upheld against a section 37 challenge the constitutionality of a legislative act less comprehensive than Initiative 593. See Washington Education Ass'n, 97 Wn.2d at 903-906 (holding that a House Bill was not incomplete in violation of art. II, § 37 merely because it incorporated by reference provisions of other acts).

[32]RCW 9A.20.021(a), (b).

[33]See RCW 9.94A.120(4) and RCW 9.94A.030.

[34]Washington Education Ass'n, 97 Wn.2d at 905.

operate to change or modify prior acts.[35] Section 37 "was not intended to prohibit the passage of a law which declared fully its provisions without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes."[36] Instead, the purpose of section 37 was to "protect the members of the legislature and the public against fraud and deception . . . ."[37] Initiative 593 is a complete act. Its purpose was not hidden,[38] and its modification of other sentencing laws is readily apparent from a reading of its provisions.[39] Even though the initiative may in some manner affect RCW 9A.20.021, that is not a defect of constitutional magnitude.[40] Initiative 593 does not violate article II, section 37 of the Washington Constitution.

## BILL OF ATTAINDER

Appellant argues that Initiative 593 is a bill of attainder proscribed by United States Constitution Article I, Section 10 and Washington Constitution article I, section 23.[41] This argument is without merit.

■ ■ A bill of attainder is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a

---

[35]*See, e.g., id.*

[36]*Id.* at 906 (quoting *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 P. 316 (1910)).

[37]*Id.* (quoting *Spokane Grain,* 59 Wash. at 82).

[38]*See generally* RCW 9.94A.392 (Findings and intent of Initiative 593).

[39]*See* RCW 9.94A.120(4) ("A persistent offender shall be sentenced to a term of total confinement for life . . . *notwithstanding the maximum sentence under any other law.*") (emphasis added).

[40]*See Washington Education Ass'n,* 97 Wn.2d at 906 (holding that a complete act which had the effect of restricting the operation of existing law, but did not articulate that fact, was not in violation of CONST. art. II, § 37). *See also Naccarato v. Sullivan,* 46 Wn.2d 67, 75, 278 P.2d 641 (1955) (stating the rule that CONST. art. II, § 37 is not violated by complete acts which incidentally or impliedly amend prior acts).

[41]Appellant's Br. at 17-19.

judicial trial."[42] It is "a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature."[43] However, a legislative act is not a bill of attainder merely because it compels an individual or a defined group to "bear burdens which the individual or group dislikes . . . ."[44] Such an interpretation would "cripple the very process of legislating, for any individual or group that is made the subject of adverse legislation can complain that the lawmakers could and should have defined the relevant affected class at a greater level of generality."[45]

Initiative 593 does not constitute a bill of attainder. Three elements distinguish bills of attainder from constitutionally permissible legislation: (1) legislative infliction of punishment upon (2) specifically designated persons or groups (3) in the absence of the procedural safeguards of a judicial trial.[46] Not all of these elements are present in the initiative. Like any other sentencing law, it does establish the punishment for commission of certain criminal offenses, in itself a proper legislative function.[47] However, punishment is only imposed upon a *judicial determination* that those offenses were committed.

■ In this case, the determination whether appellant committed a third "most serious offense," thus bringing him within the purview of the initiative, was made under

---

[42]*Nixon v. Administrator of General Service*, 433 U.S. 425, 468, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977).

[43]*United States v. Brown*, 381 U.S. 437, 442, 85 S. Ct. 1707, 14 L. Ed. 2d 484 (1965).

[44]*Nixon*, 433 U.S. at 470.

[45]*Id.*

[46]*See Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 847, 104 S. Ct. 3348, 82 L. Ed. 2d 632 (1984); *United States v. Lovett*, 328 U.S. 303, 315, 66 S. Ct. 1073, 90 L. Ed. 1252, (1946); *Brown*, 381 U.S. at 447.

[47]*See, e.g., State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, *amended by* 718 P. 2d 796, *cert. denied*, 479 U.S. 930 (1986).

the procedural safeguards of a judicial proceeding.[48] Also, the initiative does not specifically designate any pre-existing class of persons or groups to be punished, nor does it attempt to identify them by past conduct. Only those persons who commit a third "most serious offense" after the effective date of the initiative's enactment are subject to a life sentence. It follows, then, that those persons falling within the initiative's purview do not comprise a targeted, readily identifiable group being subjected to legislative punishment.[49]

### SEPARATION OF POWERS

Appellant next claims Initiative 593 violates the separation of powers doctrine by transferring sentencing discretion from judges to prosecutors without providing standards for exercise of that discretion.[50] This argument, too, is without merit.

■ Appellant's conclusion that Initiative 593 constitutes an impermissible delegation of sentencing authority rests upon the erroneous premise that sentencing authority is vested solely in the judiciary. It is not. This court has consistently held that fixing penalties for criminal offenses is a legislative, and not a judicial, function.[51]

In *State v. Ammons*, for example, the appellant made a similar challenge to the constitutionality of the Sentencing Reform Act of 1981 (SRA), RCW 9.94A. Appellant in

---

[48]Appellant entered pleas of "guilty" in two of his three convictions for a "most serious offense."

[49]*See Selective Serv. Sys.*, 468 U.S. at 847 (finding that a statute denying federal financial aid to male students who had not registered for the draft was not a bill of attainder because it gave nonregistrants 30 days after receiving notice they were ineligible to register and regain eligibility).

[50]Appellant's Br. at 12.

[51]*See, e.g., Ammons*, 105 Wn.2d at 180; *State v. Frietag*, 127 Wn.2d 141, 144-45, 896 P.2d 1254 *amended by* 905 P. 2d 355 (1995); *State v. Bryan*, 93 Wn.2d 177, 181, 606 P.2d 1288 (1980); *State v. Monday*, 85 Wn.2d 906, 909-10, 540 P.2d 416 (1975) ("[I]t is the function of the legislature and not of the judiciary to alter the sentencing process.").

that case argued that the SRA violated the separation of powers doctrine by limiting the trial court's discretion over sentencing, thus infringing upon the judicial power.[52] This court rejected that argument, stating that appellant "fail[ed] to recognize that the trial court does not have absolute discretion to do whatever it pleases. The trial court's discretion in sentencing is that . . . given by the Legislature."[53] Even if Initiative 593 did give prosecutors complete discretion to determine which defendants should be sentenced under its provisions, that would still not constitute impermissible intrusion upon the *judicial* power.

■■ The argument might perhaps suggest an unconstitutional delegation to the executive branch of the *legislative* authority to alter the sentencing process.[54] But that argument is also without support. This court in *State v. Lee* rejected a similar challenge to the former habitual criminal statute (RCW 9.92.090), which imposed a life sentence for a defendant's third felony conviction.[55] In *Lee*, the appellant claimed RCW 9.92.090 was an unconstitutional delegation of legislative authority to the prosecu-

---

[52]*Ammons*, 105 Wn.2d at 181.

[53]*Id.*

[54]*See State ex rel. Schillberg v. Cascade Dist. Ct.*, 94 Wn.2d 772, 781, 621 P.2d 115 (1980) (noting that a legislative grant of authority to the prosecutor over alternative sentence eligibility must be accompanied by standards for guiding decision making "to prevent an unconstitutional delegation of legislative authority to alter the sentencing process."); *Ammons*, 105 Wn.2d at 180-81 (quoting from *Cascade Dist. Ct.*).

[55]The former habitual criminal statute, RCW 9.92.090, provided in relevant part as follows:

Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life.

Laws of 1909, ch. 249, § 34, at 899.

tor.[56] This court rejected that claim, however, holding that "the statute [was] a proper legislative investiture of authority to the executive branch."[57] In reaching that conclusion, the court reasoned that:

> RCW 9.92.090 is not a delegation of the legislature's power to determine appropriate punishment for criminal violations. *The statute merely vests the prosecution with the power to charge a person with the status of being a habitual criminal.* The prosecution must prove its allegations beyond a reasonable doubt. Implicit within the statute is a reasonable standard to govern the prosecuting attorney's exercise of discretion to initiate these proceedings. The decision to prosecute must be based on the prosecutor's ability to meet the proof required by the statute.[58]

Prosecutors have no more discretion under Initiative 593 than they had under the habitual criminal statute. Initiative 593, like that statute, does no more than vest the prosecutor with the power to charge a person with the status of being a "persistent offender," much like the charge of being an "habitual criminal" under former RCW 9.92.090. Indeed, prosecutorial discretion is limited under Initiative 593 because sentence enhancement under the initiative applies only to third convictions for a "most serious offense,"[59] while under the former habitual criminal statute, RCW 9.92.090, sentence enhancement was available to prosecutors against offenders upon a third conviction for *any* felony.

### REPUBLICAN FORM OF GOVERNMENT

United States Constitution Article IV, Section 4, commonly referred to as the "Guarantee Clause," provides in part that "[t]he United States shall guarantee to every

---

[56]*State v. Lee*, 87 Wn.2d 932, 933, 558 P.2d 236 (1976).

[57]*Id.* at 934.

[58]*Id.* at 933-34 (emphasis added).

[59]RCW 9.94A.120(4).

state in this union a republican form of government
. . . ." Appellant argues that the Guarantee Clause is
"absolutely incompatible with direct democracy as
embodied in the recall, referendum, and initiative schemes
. . . ."[60] Those schemes, appellant claims, violate the ideal
of a republican form of government because they allow
enactment of laws outside the legislature's deliberative
processes which are designed to protect the public from its
own imprudent impulses.[61] Reasoning that "the Constitu-
tion's reference to 'republican government' is a reference
to this sort of deliberative democracy," and that "[d]elib-
erative democracy is the antithesis of direct democracy,"[62]
appellant concludes that the products of direct democracy,
including initiative measures, are potentially invalid
under the Guarantee Clause.[63]

 Appellant's argument challenges the constitutional-
ity of the initiative process itself and thus presents an is-
sue which may be beyond the power of this court to decide.
In *Pacific States Telephone and Telegraph Company v.
Oregon*, the United States Supreme Court considered a
challenge to the Oregon initiative and referendum process
based upon a claim that it was inconsistent with the
Federal Constitution's guarantee of a republican form of
government.[64] In that case, the Court held that the issue
was political and governmental and not within the judicial
power to determine:

> As the issues presented, in their very essence, are, and have
> long since by this court been, definitely determined to be po-
> litical and governmental, and embraced within the scope of
> the powers conferred upon Congress, and not therefore within
> the reach of judicial power, it follows that the case presented

---

[60]Appellant's Br. at 45.

[61]*Id.* at 45-46.

[62]*Id.* at 48.

[63]*Id.*

[64]*Pacific States Telephone and Telegraph Company v. Oregon*, 223 U.S. 118,
32 S. Ct. 224, 56 L. Ed. 377 (1911).

is not within our jurisdiction, and the writ of error must therefore be, and it is, dismissed for want of jurisdiction.[65]

*Pacific* still represents good law,[66] and earlier cases decided by this court have been in accord with its holding.[67] Because appellant's argument does not satisfactorily address the power of the court to decide an otherwise political or governmental issue, we decline to rule on it in this case. Even assuming appellant's claim does present a justiciable question, he cites no authority to support his claim that Initiative 593 violates the Guarantee Clause of the Federal Constitution. His argument is based solely upon a law review article by former Oregon Supreme Court Justice Hans Linde in response to an antihomosexual initiative in that state.[68]

In his article, Justice Linde asserts that initiatives falling into any one of five categories should be declared invalid under the Guarantee Clause. These are initiatives which (1) refer to any group in pejorative or stigmatizing terms or exalt one group over another; (2) by their terms are directed against racial, ethnic, linguistic, religious or social groups; (3) are proposed in a historical and political context in which there is no doubt that voters are being asked to choose sides for or against an identifiable group; (4) appeal to majority emotions to impose values that offend the conscience of other groups without being directed

---

[65]*Id.* at 151.

[66]Although the Court's holding in *Pacific* has not been explicitly overruled, it has recently been called into question. *See New York v. United States*, 505 U.S. 144, 184, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992) (noting that the Court has addressed the merits of claims founded on the Guarantee Clause, but has declined to resolve the question whether all claims under the Clause present nonjusticiable political questions).

[67]*See State v. Owen*, 97 Wash. 466, 469, 166 P. 793 (1917); *State Ex Rel. Mullen v. Howell*, 107 Wash. 167, 179, 181 P. 920 (1919).

[68]Hans A. Linde, *When Initiative Lawmaking is Not "Republican Government": The Campaign Against Homosexuality*, 72 Or. L. Rev. 19, 41-43 (1993).

at those groups; and (5) place affirmative legislation in the constitution itself.[69]

 Appellant contends that Initiative 593 falls into categories one and three.[70] However, the groups to which Justice Linde was referring are those commonly identifiable by race, ethnicity, religion, or other socially identifiable characteristics such as sexual orientation.[71] There is nothing in the article to suggest the author meant to include persons whose only identifiable characteristic is a similar criminal history.

We find Appellant's argument on violation of U.S. CONST. art. IV, § 4 without merit.

## EQUAL PROTECTION

 Washington Constitution article I, section 12, and the Fourteenth Amendment to the United States Constitution guarantee that persons similarly situated with respect to the legitimate purpose of the law must receive like treatment.[72] Appellant argues Initiative 593 violates both the state and federal equal protection clauses because its classification is based solely upon recidivism, which does not closely relate to the initiative's stated objective of reducing crime.[73] This court has consistently construed the federal and state equal protection clauses identically and considered claims arising under their scope as one issue.[74]

One of three standards of review has been employed when analyzing equal protection claims.[75] *Strict scrutiny* applies when a classification affects a suspect class or

---

[69]*Id.* at 41-43.

[70]See Appellant's Br. at 49.

[71]*See* Linde, 72 OR. L. REV. at 41.

[72]*State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240(1978).

[73]*See* Appellant's Br. at 44.

[74]*State v. Smith*, 117 Wn.2d 263, 281, 814 P.2d 652 (1991) (citing cases).

[75]*State v. Shawn*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993).

threatens a fundamental right.[76] *Intermediate or heightened scrutiny,* used by this court in limited circumstances, applies when important rights or semisuspect classifications are affected.[77] The most relaxed level of scrutiny, commonly referred to as the *rational basis or rational relationship test,* applies when a statutory classification does not involve a suspect or semisuspect class and does not threaten a fundamental right.[78]

When a physical liberty interest alone is involved in a statutory classification, this court applies the deferential rational relationship test.[79] Under that test, the challenged law must rest upon a legitimate state objective, and the law must not be wholly irrelevant to achieving that objective.[80] "The burden is on the party challenging the classification to show that it is 'purely arbitrary.' "[81] The rational basis test requires only that the means employed by the statute be rationally related to a legitimate State goal, and not that the means be the best way of achieving that goal.[82] "[T]he Legislature has broad discretion to determine what the public interest demands and what measures are necessary to secure and protect that interest."[83]

Because persons convicted of three "most serious offenses" under RCW 9.94A.120(4) do not constitute a suspect or semisuspect class, and because physical liberty is an

---

[76]*Id.*

[77]*Id.; see also State v. Phelan,* 100 Wn.2d 508, 514, 671 P.2d 1212 (1983) (finding physical liberty to be an important, but not fundamental, right and a classification based solely upon wealth examined under heightened scrutiny).

[78]*Shawn,* 122 Wn.2d at 560.

[79]*State v. Coria,* 120 Wn.2d 156, 171, 839 P.2d 890 (1992) (expressly rejecting intermediate scrutiny as the appropriate standard of review where physical liberty interest involved, but where no semisuspect class is affected).

[80]*Id.* at 171.

[81]*Id.* at 172 (quoting *Omega Nat'l Ins. Co. v. Marquardt,* 115 Wn.2d 416, 431, 799 P.2d 235 (1990)).

[82]*Id.* at 173.

[83]*State v. Ward,* 123 Wn.2d 488, 516, 869 P.2d 1062 (1994).

important, but not a fundamental, right,[84] the proper standard of review in this case is *rational basis review*. Applying that standard, we conclude Initiative 593 does not violate the equal protection clauses.

The initiative's goal of improved public safety, stated clearly in RCW 9.94A.392, is a legitimate state objective.[85] And while the offenses included in the enumerated list of crimes in RCW 9.94A.030(21) may be at least debatable, they nevertheless comprise an arguably rational, and not arbitrary, attempt to define a particular group of recidivists who pose a significant threat to the legitimate state goal of public safety. Initiative 593 easily passes rational basis scrutiny and does not, therefore, violate either the federal or state equal protection clauses.

## CRUEL PUNISHMENT

The Eighth Amendment to the United States Constitution proscribes infliction of "cruel and unusual punishment,"[86] while Washington Constitution article I, section 14 proscribes infliction of "cruel punishment." Appellant contends his sentence of life without parole upon his conviction of three designated felonies violates both the Eighth Amendment and CONST. art. I, § 14.[87] This court has held that the state constitutional proscription against cruel punishment affords greater protection than its federal counterpart.[88] Accordingly, an independent analysis of appellant's claim under both constitutional provisions is appropriate.[89]

---

[84]*Phelan*, 100 Wn.2d at 514.

[85]*See Coria*, 120 Wn.2d at 172 (holding that state objective of keeping drug dealers away from school children is a legitimate state objective).

[86]The Eighth Amendment applies to the states through the Fourteenth Amendment to the United States Constitution.

[87]Appellant's Br. at 32.

[88]*State v. Fain*, 94 Wn.2d 387, 392-93, 617 P.2d 720 (1980)

[89]*See Fain*, 94 Wn.2d at 392-393 (holding that article I, § 14 is more protective than the Eighth Amendment in a case arising under the former habitual

 The United States Supreme Court has held that the cruel and unusual punishment proscription of the Eighth Amendment prohibits not only barbaric punishments, but also prohibits sentences disproportionate to the crime committed.[90] In *Solem v. Helm*, the Court held that a life sentence without possibility of parole was significantly disproportionate to defendant's principal crime of uttering a "no account" check for $100.00, along with five prior nonviolent crimes against property and one conviction for driving while intoxicated.[91] In its holding, the Court emphasized the passive nature of the defendant's crimes, noting they all were "nonviolent and none was a crime against a person."[92] However, in *Harmelin v. Michigan*, the Court rejected an Eighth Amendment proportionality challenge to a mandatory sentence of life without possibility of parole for the crime of possession of more than 650 grams of cocaine,[93] noting that the "[p]etitioner's crime . . . was far more grave than the crime at issue in *Solem*."[94]

In *Rummel v. Estelle*, the Court, against a claim that the sentence was disproportionate under the Eighth Amendment, upheld imposition of a mandatory life sentence without possibility of parole under the Texas recidivist statute.[95] The defendant in that case had been convicted of obtaining $120.75 by false pretenses and had

criminal statute (RCW 9.92.090)). *Cf. State v. Dodd*, 120 Wn.2d 1, 20-21, 838 P.2d 86 (1992) (holding that article I, § 14 extends no greater protection than the Eighth Amendment in a capital case involving the narrow question whether a defendant may waive the right to general appellate review of a death sentence) (Dore, C.J.).

[90] *Solem v. Helm*, 463 U.S. 277, 284, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983).

[91] *Id.* at 303 (Defendant was convicted under South Dakota's criminal recidivist statute).

[92] *Id.* at 297.

[93] *Harmelin v. Michigan*, 501 U.S. 957, 994-996, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991).

[94] *Id.* at 1001 (Kennedy, J., concurring).

[95] *Rummel v. Estelle*, 445 U.S. 263, 284-85, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980).

prior felony convictions for fraudulent use of a credit card and passing a forged check in the amount of $28.36.[96] In arriving at its conclusion, the Court reasoned that, given the defendant's record, the state was "not required to treat him in the same manner as it might treat him were this his first 'petty property offense.'. . ."[97] The Court also noted that, having twice imprisoned defendant for felonies, the state was entitled to "place upon [him] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State."[98]

■ Appellant Manussier's two prior convictions for first degree robbery and his current conviction for second degree robbery make his criminal history far more serious than that of the petitioners in *Solem* and *Rummel.* Those petitioners had committed only nonviolent property offenses, while Appellant Manussier committed three crimes with significant potential for violence. His offenses would in all likelihood be considered by the Supreme Court as "very serious offenses"[99] and the Court would likely conclude that a life sentence without parole is proportionate to the offenses committed by Appellant Manussier for purposes of the Eighth Amendment.

■ This court has recognized that article I, section 14 of the state constitution, like the Eighth Amendment, proscribes disproportionate sentencing in addition to certain modes of punishment.[100] "In attempting to employ proportionality analysis, courts have sought to use objective standards to minimize the possibility that the merely personal preferences of judges will decide the outcome of

---

[96]*Id.* at 265-66.

[97]*Id.* at 284.

[98]*Id.*

[99]See *Solem,* 463 U.S. at 299 (contrasting defendant's six "minor" felonies involving property with "very serious offenses" such as "a third offense of heroin dealing or aggravated assault."); *Harmelin,* 501 U.S. at 1002 (Kennedy, J., concurring) (noting that possession of illegal narcotics "falls in a different category from the relatively minor, nonviolent crime at issue in *Solem*.").

[100]See *Fain,* 94 Wn.2d at 395-97.

each case."[101] The court considers three factors in determining whether a punishment is disproportionate to the crime committed and thus "cruel" in contravention of CONST. art. I, § 14: (1) the nature of the offense; (2) the punishment the defendant would have received in other jurisdictions for the same offense; and (3) the punishment imposed for other offenses in the same jurisdiction.[102]

 Applying these factors to appellant's case leads to the conclusion that his sentence is not disproportionate in violation of the article I, § 14 proscription of cruel punishment. Each of the offenses underlying his conviction as a "persistent offender" is robbery, which is a potentially violent crime against a person.[103] His two prior convictions for first degree robbery, a class A felony,[104] were based upon facts which represented a particularly significant risk of danger to others.[105] All three of his offenses are serious crimes[106] which carry maximum penalties ranging from ten years' imprisonment (second degree robbery) to life imprisonment (first degree robbery).[107] This court has observed in an habitual criminal case that "[t]he repetition of criminal conduct aggravates the guilt of the last conviction and justifies a heavier penalty."[108]

---

[101]*Id.* at 397.

[102]*Id.* at 397-402.

[103]*See* RCW 9A.56.190 (Definition of robbery).

[104]*See* RCW 9A.56.200.

[105]Robbery in the first degree requires the perpetrator to be armed with a deadly weapon, display what appears to be a deadly weapon, or inflict bodily injury during the commission of a robbery or immediate flight from it. *See* RCW 9A.56.200.

[106]*Compare Fain*, 94 Wn.2d at 397-98 (holding that multiple crimes of fraud used to obtain small amounts of money were non-threatening to persons or property and thus "relatively minor") *with State v. Lee*, 87 Wn.2d 932, 937, 558 P.2d 236 (1976) (holding that a life sentence under the habitual criminal statute was not unconstitutionally disproportionate where prior convictions were for robbery, two burglaries in the second degree, and assault in the second degree).

[107]*See* RCW 9A.20.021(1)(a), (b).

[108]*Lee*, 87 Wn.2d at 937.

Factors two and three lead to a conclusion that appellant's sentence in this case is not unconstitutionally disproportionate to the crime he committed. He has provided no information concerning the punishment he would have received in other jurisdictions for his offenses in this state. However, Initiative 593 is consistent with reports on the national trend of substantially increasing criminal sentences for repeat offenders.[109] There is no logical or practical basis for comparison of punishment appellant might receive for other crimes committed in Washington. Sentences under the Sentencing Reform Act vary with each defendant's criminal history and the presence or absence of aggravating or mitigating factors. In appellant's case, however, even without reference to Initiative 593, two of his three "most serious offenses" fall into a *class of crimes with a maximum allowable sentence of life imprisonment.*[110] Under Initiative 593, appellant would receive a sentence of life imprisonment upon his conviction for any armed offense, any offense with a finding of sexual motivation, *any class A felony*, or any of the twenty-one offenses enumerated in RCW 9.94A.030(21)(a)-(u).

Considering these factors, along with the fact of appellant's repetition of serious criminal conduct, a sentence of life without possibility of parole upon his third conviction

---

[109]*See, e.g.,* Benjamin C. Gonring, Comment, *Has the Legislature Thrown Us a Curve?: An Analysis of Wisconsin's "Three Strikes" Law*, 1995 Wis. L. Rev. 933 (1995) (noting that the following states have passed "three strikes" or similar legislation since January 1993: California, Colorado, Connecticut, Georgia, Indiana, Kansas, Louisiana, Maryland, New Mexico, North Carolina, Tennessee, Virginia, Washington, and Wisconsin); *see also People v. Ingram,* 40 Cal. App. 4th 1397, 48 Cal. Rptr. 256 (1995). *Review denied,* March 14, 1996. (noting that California's "Three Strikes" scheme is consistent with nationwide pattern of substantially increasing sentences for habitual offenders).

[110]*See* RCW 9A.20.021(a).

for robbery is not a disproportionate penalty in violation of article I, § 14.[111]

## DUE PROCESS

■ Appellant claims Initiative 593 violates his substantive and procedural due process rights under WASH. CONST. art. I, § 3 and Amendments V and XIV of the United States Constitution. He also claims his substantive and procedural due process rights are afforded greater protection under the state constitution than under the parallel federal provision. Thus, we must answer the first question whether an independent interpretation under the state constitution is appropriate by resort to the six nonexclusive factors announced by this court in *State v. Gunwall*.[112]

■ The *Gunwall* factors do not favor an independent inquiry under article I, section 3 of the state constitution. Factors (1) and (2) indicate co-extensive state and federal protections, inasmuch as the text of CONST. art. I, § 3 and the Fifth and Fourteenth Amendments to the Federal Constitution are identical. Factors (3) and (4) similarly indicate no broader protection under the state constitution since "[t]his court traditionally has practiced great restraint in expanding state due process beyond federal

[111]Appellant also argues that Initiative 593 violates the Eighth Amendment and article I, § 14 because it imposes punishment on an "untenable basis" by criminalizing the "propensity" or "bare intention" to commit crimes. Appellant's Br. at 41. The only authority offered in support of this claim is *Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962). In that case the United States Supreme Court, in a plurality opinion, overturned a conviction and 90-day jail sentence imposed for what it termed the "status" of being addicted to narcotics. *Id.* at 667. However, the Court clarified this point in *Powell v. Texas*, 392 U.S. 514, 533, 88 S. Ct. 2145, 20 L. Ed. 2d 1254 (1968), where it explained that *Robinson* does allow imposition of criminal penalties for commission of some *act* which society has an interest in preventing. Initiative 593, as appellant concedes, does precisely that: it imposes a life sentence without possibility of parole *upon commission* of a third "most serious offense," an act which society has an interest in preventing.

[112]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). Those factors are: (1) the textual language; (2) differences in the texts; (3) constitutional and common law history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern. *Id.* at 61-62.

perimeters."[113] "Although not controlling, federal decisions regarding due process are afforded great weight due to the similarity of the language."[114]

While case law developed by this court under the former habitual criminal statute provided for specific procedures to be followed in cases prosecuted under that statute, those cases relied upon federal authority for their holdings.[115] Factor (5) always favors independent state analysis because "[t]he state constitution *limits* powers of state government, while the federal constitution *grants* power to the federal government."[116] Factor (6) does not favor independent state constitutional interpretation because Initiative 593, although subject to considerable public debate and analysis, is no more a matter of *particular* state concern than any other law challenged on due process grounds.

Appellant claims Initiative 593 violates his state and federal substantive due process rights by giving prosecutors undue leverage in the plea bargaining process, thus chilling the exercise of the right to trial.[117] He argues that criminal defendants in the "vast majority of cases" are virtually compelled by the initiative to plead "guilty" to lesser offenses falling outside the "most serious offense" category to avoid the possibility of receiving a mandatory life sentence without parole. This argument is unpersuasive.

Appellant has not provided any evidence or authority to support his assertion of "forced plea bargaining" in the

[113]*Rozner v. Bellevue*, 116 Wn.2d 342, 351, 804 P.2d 24 (1991) (Dolliver, J.) (citing *Gunwall*).

[114]*Id.* (citing cases).

[115]*See, e.g., State v. Murdock*, 91 Wn.2d 336, 340, 588 P.2d 1143 (1979) (holding that the burden is on the state to prove the fact of prior convictions beyond a reasonable doubt, citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)).

[116]*State v. Russell*, 125 Wn.2d 24, 61, 882 P.2d 747 (1994) (citing *Gunwall*) (emphasis in original), *cert. denied,* 115 S. Ct. 2004 (1995).

[117]Appellant's Br. at 29.

"vast majority of cases." Indeed, the history of his own case contradicts such a claim. Appellant pleaded "guilty" to a lesser offense than the one originally charged. But the lesser offense was still a "most serious offense" under 9.94A.030(21). Appellant by his knowing plea of "guilty" projected himself into the ambit of the "three strikes law." While he waived his right to a jury trial, this could not have been to avoid the harsh effect of Initiative 593. Perhaps there was another reason, but it is not indicated in the record before us.[118]

Appellant also argues his state and federal procedural due process rights are violated by Initiative 593. His argument is based largely upon this court's decisions under the former habitual criminal statute. That statute imposed a mandatory life sentence for any defendant convicted of three felonies,[119] but did not establish procedures for habitual criminal hearings. This court took a step towards providing them.[120] We held that the State bears the burden of pleading and proving *beyond a reasonable doubt* the fact of two prior convictions in an habitual criminal proceeding.[121] We have also held that the existence of prior convictions in an habitual criminal prosecution was a question of fact to be resolved in a separate jury trial,[122] and if the defendant timely raised the issue, the State was

---

[118]Initiative 593 actually reduces a prosecutor's flexibility in the plea bargaining process. The offenses listed as "most serious" in RCW 9.94A.030 are a comprehensive compilation of crimes with high standard range sentences. A prosecutor considering a plea bargain in a case falling under Initiative 593 would usually be forced to choose between a relatively low standard range sentence and life without parole. This virtually precludes the prosecutor from plea bargaining. A criminal defendant has no constitutional right to a plea bargain. *Weatherford v Bursey*, 429 U.S. 545, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977); *State v. Wheeler*, 95 Wn.2d 799, 804, 631 P.2d 376 (1981) (citing *Weatherford*).

[119]RCW 9.92.080.

[120]*See State v. Kelly*, 52 Wn.2d 676, 678, 328 P.2d 362 (1958).

[121]*State v. Murdock*, 91 Wn.2d 336, 340, 588 P.2d 1143 (1979); *State v. Furth*, 5 Wn.2d 1, 11, 104 P.2d 925 (1940); *State v. Holsworth*, 93 Wn.2d 148, 159, 607 P.2d 845 (1980); *Kelly*, 52 Wn.2d at 678.

[122]*Furth*, 5 Wn.2d at 18-19 (citing cases); *see also Murdock*, 91 Wn.2d at 340-41.

required to prove the constitutional validity of the prior convictions beyond a reasonable doubt.[123]

Under the Sentencing Reform Act of 1981 (SRA) (RCW. 9.94A), of which Initiative 593 is a part, the procedures are quite different. The defendant's prior convictions need only be proved by a *preponderance of the evidence*, not proved beyond a reasonable doubt.[124] Also, there is no provision in the SRA, or in Initiative 593 itself, for a separate jury trial on the issue of prior convictions or the constitutional validity of those prior convictions.

In *State v. Ammons*, this court upheld the constitutional validity of RCW 9.94A, finding "the sentencing court's determination of prior convictions under the SRA to be most analogous to the former parole board's determination of criminal activity in a parole revocation proceeding" where the preponderance of the evidence standard had been held "constitutionally sufficient."[125] The court also concluded in that case that the State need not prove the constitutional validity of a defendant's prior convictions unless they had been previously declared unconstitutional or were facially unconstitutional.[126]

 Appellant has not been denied his procedural due process rights under either the federal or state constitutions. While the former habitual criminal statute is somewhat analogous to Initiative 593 as a criminal recidivist statute, the initiative was enacted and codified as part of the SRA (RCW 9.94A). Therefore, the procedures set forth in that statute (RCW 9.94A.110) must govern proceedings under RCW 9.94A.120(4), regardless of any similarity to the habitual criminal statute. Those procedures are constitutional even though they are less protective than those developed by the court under the former habitual criminal statute. The United States Supreme

---

[123]*Holsworth*, 93 Wn.2d at 159.

[124]RCW 9.94A.110.

[125]*Ammons*, 105 Wn.2d at 186.

[126]*Id.* at 187 (the court distinguished the habitual criminal cases).

Court has held that a criminal defendant has no constitutional right to a jury trial on questions of fact relating to sentencing.[127]

In *Parke v. Raley*, the Supreme Court upheld Kentucky's persistent felony offender statute under which prior convictions were presumed valid once the prosecution proved existence of the prior judgments.[128] Under the Kentucky scheme, the prosecution's proof of prior judgments shifts to the defendant the burden of showing the defendant's rights were infringed or that some procedural irregularity occurred in the earlier proceedings.[129] If the defendant refutes this "presumption of regularity," the burden shifts back to the government to prove the validity of the judgments.[130] The Court referred to this approach as a "middle position," pointing out that some jurisdictions place the entire burden on the defendant once the prosecution has established the fact of prior convictions.[131] In upholding the Kentucky statute, the Court emphasized the "presumption of regularity that attaches to final judgments," even when the question involves a waiver of constitutional rights.[132] The Court also noted that due process does not require the state to prove the validity of a prior conviction, once the burden has shifted, by clear and convincing evidence, and suggested that a preponderance of the evidence standard would be constitutional.[133]

Following these decisions, we cannot conclude that federal due process requires that Initiative 593 must contain the procedural protections created by this court

[127]*Hildwin v. Florida*, 490 U.S. 638, 640, 109 S. Ct. 2055, 104 L. Ed. 2d 728 (1989); *Libretti v. United States*, 116 S. Ct. 356, 133 L. Ed. 2d 271 (1995); *McMillan v. Pennsylvania*, 477 U.S. 79, 93, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986).

[128]*Parke v. Raley*, 506 U.S. 20, 113 S. Ct. 517, 121 L. Ed. 2d 391, 406 (1992).

[129]*Id.* at 400.

[130]*Id.*

[131]*Id.* at 406.

[132]*Id.* at 400.

[133]*Id.* at 407.

under our former habitual criminal statute. This court declared the procedural provisions of the SRA (RCW 9.94A) constitutional in *State v. Ammons.*[134] We now conclude that state due process requires nothing more than the procedures provided in RCW 9.94A.110 and that appellant's procedural due process claim is without merit.

## SUMMARY AND CONCLUSIONS

Initiative 593 does not violate Washington Constitution article II, section 37 because it is a complete act capable of being understood without reference to any other statute, and because its modification of existing law is not of constitutional magnitude.

Initiative 593 does not constitute a bill of attainder in violation of the federal or state constitutions because it does not legislatively impose punishment on persons or any identifiable group. Instead, like any other sentencing law, it establishes the punishment for commission of certain crimes, in itself a proper legislative function, only upon a *judicial determination* that those crimes were committed.

Initiative 593 does not violate the separation of powers doctrine as an impermissible delegation of sentencing authority from the judiciary to the executive. Determination of penalties for criminal offenses is a legislative, not a judicial, function. The initiative merely vests prosecutors with authority to charge a person with the status of being a "persistent offender."

Appellant's claim that Initiative 593 violates the Federal Constitution's guarantee of a republican form of government presents a political, and not a judicial, question which is beyond the power of this court to determine. Even assuming the question is justiciable, appellant has cited no authority to support his claim that Initiative 593 compromises the ideal of a republican form of government.

---

[134] *Ammons*, at 186.

Initiative 593 does not violate either the federal or state equal protection clauses because it is rationally related to the legitimate State goal of improved public safety.

Appellant's sentence does not violate the cruel punishment clause of either the Eighth Amendment to the United States Constitution or Washington Constitution article I, section 14. His sentence is proportionate to the seriousness of his crimes, and was not imposed on an "untenable basis." Instead, it was imposed upon commission of his third "most serious offense," an act which society has a legitimate interest in preventing.

Initiative 593 does not violate appellant's substantive or procedural due process rights under either the federal or state constitution. Appellant's substantive due process right to trial by jury was not affected because he knowingly waived that right by pleading "guilty" to a third "most serious offense." Also, the procedural requirements under the SRA (RCW 9.94A) are sufficient to satisfy procedural due process under both the federal and state constitutions.

We affirm the Pierce County Superior Court in sentencing appellant George W. Manussier to life imprisonment without possibility of parole under Initiative 593, the "three strikes law," RCW 9.94A.120(4), following his plea of "guilty" to robbery in the second degree. We reject appellant's constitutional claims concerning the validity of Initiative 593 and uphold that law as constitutional under both the Washington and United States constitutions.

DURHAM, C.J., and DOLLIVER, GUY, ALEXANDER, and TALMADGE, JJ., concur.

MADSEN, J. (dissenting) — This court long ago recognized that the right to an information alleging grounds for sentence enhancement and the right to a jury determination based on proof beyond a reasonable doubt of those allegations are guaranteed by the Washington State Constitution. *State v. Furth,* 5 Wn.2d 1, 104 P.2d 925 (1940). As

recently as 1986, this court recognized these rights when the sentence to be imposed exceeds the statutory maximum. *State v. Ammons,* 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796, *cert. denied,* 479 U.S. 930 (1986). Instead of following long established precedent, the majority treats sentencing of a persistent offender as a new concept and views a sentence of life without possibility of parole as just another line of the Sentencing Reform Act of 1981 (SRA) grid, despite the fact that such a sentence exceeds the statutory maximum available for any class C or B felony. To reach its result, the majority fails to acknowledge that this court has found the right to a jury trial under the Washington State Constitution is not coextensive with the federal right[135] and the *Furth* decision which specifically addresses the right to an information and a jury trial before a court may impose an enhanced sentence based on prior convictions. I respectfully dissent.

Adhering to the requirements laid down by this court in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), the defendant in this case presents a careful, persuasive analysis of the Washington Constitution and case law dating from 1919 to argue for his right to trial by jury and other due process protections when facing an enhanced sentence under this state's Persistent Offender Accountability Act. RCW 9.94A.030. In rejecting the defendant's argument, the majority cites only *one* of the many cases relied on by the defendant, and erroneously concludes that the Washington case law on sentencing enhancements derives from federal law. Further, the majority announces that the statute under review here is not a matter of particular state or local concern. However, the issue is not whether the Persistent Offender Accountability Act is a matter of state or local concern; it is whether the constitutional rights to a jury trial and attendant due process protections afforded a criminal defend-

---

[135]This court has found the right to a jury trial under the Washington State Constitution is not coextensive with the federal right. *State v. Hobble,* 126 Wn.2d 283, 298-99, 892 P.2d 85 (1995); *City of Pasco v. Mace,* 98 Wn.2d 87, 97, 653 P.2d 618 (1982).

ant facing an enhanced penalty based on recidivism are historically matters of State concern.

The *Gunwall* analysis consists of six nonexclusive factors. *Gunwall*, 106 Wn.2d at 61-62. Factor three relates to the constitutional and common law history of the issues under consideration. Factor four requires a review of pre-existing state law. The majority states that these two factors indicate no broader protection under the state constitution for a persistent offender facing an enhanced penalty in excess of statutory maximums. This is so, the majority says, because the case law requiring a jury trial on the facts used for enhancement relies upon federal authority for its holdings. Majority at 680. The majority acknowledges that case law was developed in this state requiring specific procedures to be followed in prosecutions under the habitual offender statutes. However, the majority states that such case law is inapposite because it dealt with the former habitual offender statutes, not the new persistent offender statute. Majority at 680.

Contrary to the conclusions drawn by the majority, a review of the former habitual offender statute and case law, as well as the case law pertaining to sentence enhancements, shows that (1) the persistent offender law, like the former habitual offender statute, is a sentencing enhancement which relies on proof of prior convictions, and (2) cases from this court defining the right to a jury and the due process requirements for sentence enhancement are grounded in this state's own constitution.

Recidivist statutes such as the persistent offender law (Three Strikes and You're Out) are not new in American jurisprudence. By 1820, habitual offender laws, or recidivist laws, were in existence in nearly every state as well as in England. *See McDonald v. Massachusetts*, 180 U.S. 311, 312, 21 S. Ct. 389, 45 L. Ed. 542 (1901); *State v. Furth*, 5 Wn.2d 1, 104 P.2d 925 (1940); *Cases of William Ross and William Riley*, 19 Mass. (2 Pick) 165 (1824); *Johnson v. New York*, 55 N.Y. 512, 514 (1874); 1 JOEL PRENTISS BISHOP, COMMENTARIES ON THE CRIMINAL LAW §§ 963-64 (5th ed.

1872); 3 FRANCIS WHARTON, CRIMINAL LAW § 3417. These statutes generally imposed "aggravated penalties on one who commits a crime after having already been twice subjected to discipline by imprisonment." *McDonald,* 180 U.S. at 312. In a discussion of recidivist laws generally, Bishop stated:

> If, in a particular case, the offence is the first, or is to be prosecuted only as such, the indictment need not specially charge it to be the first; for this is presumed. But if it is the second or third, and it is sought to make the sentence heavier by reason of its being so, the fact thus relied on must be averred in the indictment; because the rules of criminal procedure require the indictment, in all cases, to contain an averment of every fact essential to the punishment sought to be inflicted. And, of course, the averment must be proved.
>
> . . . .
>
> When the indictment is seen to charge a previous conviction, the prisoner is arraigned on the whole in the usual manner. Then, if he pleads not guilty, the jury is sworn, and they are first charged to inquire only as to the subsequent offence. If they find him guilty of it, they are next, without being resworn, to pass upon the other part of the indictment. And in each instance only the part of the indictment on which they are about to pass is read to them.

1 BISHOP §§ 961, 964, at 564, 567.

Washington declared statehood and adopted its state constitution in 1889. In 1903, the Legislature passed the first habitual criminal statute, providing for life imprisonment upon a subsequent conviction for any person convicted twice previously of any felony or four prior convictions in which the intent to defraud was an element. LAWS OF 1903, ch. 86 (REM. BALL. CODE, §§ 2177-78). Consistent with the common law practice, Washington's 1903 habitual offender statute included the right of a jury trial on the question of whether the prior convictions upon which the enhanced penalties rested were proven beyond a reasonable doubt. *Furth,* 5 Wn.2d at 3.

The constitutionality of recidivist laws was challenged

on various grounds in state courts. The primary grounds for challenge were that enhanced penalties based on prior convictions violated the prohibition against being put twice in jeopardy and that the law was ex post facto. *State v. Findling*, 123 Minn. 413, 415, 144 N.W. 142 (1913) (collecting cases). Many of the challenges were brought under the various states' constitutions. *Id.* at 415 (comparing the text of Minnesota constitution with other state constitutions); *Blackburn v. State*, 50 Ohio 428, 432 (1893) (challenging recidivist law on state and federal constitutional grounds). Other state court challenges were brought under the federal constitution. *People v. Stanley*, 47 Cal. 113, 117 (1873). In Washington, the first constitutional challenge to the recidivist law came in *State v. Le Pitre*, 54 Wash. 166, 103 P. 27 (1909) (challenging the 1903 habitual offender law).

It is not clear whether the original challenges to the habitual offender law in Washington were made under the state constitution or the federal constitution. However, in upholding the sentence enhancement law, this court cited cases which had decided the identical issues on both state and federal constitutional grounds. *Le Pitre*, 54 Wash. at 168. It is clear, though, that when a recidivist law was challenged before the U.S. Supreme Court in *McDonald* in 1900, the Court declined to determine whether federal protections regarding the right to a jury trial, the right to be free from being placed twice in jeopardy, the right to be free from cruel or unusual punishment, and the right to due process apply to state action. *McDonald*, 180 U.S. at 313. The court found no violation of federal protections and then stated:

> There is therefore no occasion to consider whether any of the provisions of the Constitution of the United States on these points can apply to the courts of the several States.

*Id.* at 313.

Washington's recidivist statute was amended in 1909. In that later statute, the Legislature failed to specify the pro-

cedure to be followed. LAWS OF 1909, ch. 249 § 34 (REM. REV. STAT., § 2286). In practice, however, the procedures followed under the 1903 statute continued in force. Following conviction on a charge which would expose a defendant to enhanced punishment, the prosecutor would file a supplemental information alleging the defendant was a habitual offender by virtue of his prior convictions. A jury would then decide whether (1) there were prior convictions, and (2) if the defendant was the subject of those convictions. *Furth*, 5 Wn.2d at 10; *Le Pitre*, 54 Wash. at 169.

In *Furth,* the court considered the appeal of a defendant who was denied a right to a jury trial under the 1909 version of the habitual offender statute. Just as in the case before us today, the trial court, sitting without a jury, determined whether the defendant qualified to be sentenced as a habitual offender. Following the jury trial on the underlying offense, the trial court heard evidence regarding the prior convictions and evidence relating the convictions to the defendant. *Furth*, 5 Wn.2d at 10. On appeal, the State argued that the defendant had no right to a jury trial under the 1909 statute and that there was no such right available under the Washington Constitution. This was so, the State argued, because the State constitution guarantees the right to a trial by jury where the defendant is charged with the commission of an "offense," and being a habitual criminal is not a criminal offense. *Id.* at 6.

This court rejected the State's argument, holding that under CONST. art. I, § 21 a defendant facing a sentencing enhancement based on the existence of prior convictions is entitled to have the question of a prior conviction determined by a jury. *Furth*, 5 Wn.2d at 18-19.

> Where previous convictions are charged in an information for the purpose of enhancing the punishment of the defendant, such convictions must be proved beyond a reasonable doubt, since the fact of the prior convictions is to be taken as an essential element of the offense charged, at least to the

extent of aggravating it and authorizing an increased punishment.

*Id.* at 11. The court also acknowledged that the right to a jury trial, which had been included in the 1903 habitual criminal statute, was omitted from the 1909 version, the statute at issue. The court stated, however, that inclusion of the right to a jury trial in the 1903 statute was "merely declaratory of the right the defendant had" *under the state constitution. Id.* at 19.

> [T]he courts cannot trench on the province of the jury upon questions of fact. It is the function of the jury—not the court—to settle disputed issues of fact. The jury does not determine the guilt or innocence of the accused of the previous crimes charged. The issues of fact were whether there were previous convictions and whether appellant was the subject of those convictions. On a charge of a second or subsequent offense, the question of a prior conviction is an issue of fact to be determined by the jury.

*Furth,* 5 Wn.2d at 19. The court noted that the overwhelming weight of authority agreed that "on a charge of a second or subsequent offense, the question of a prior conviction is an essential element of the offense charged and is an issue of fact to be determined by the jury." *Id.* at 11.

The majority in this case attempts to distinguish the procedures required in *Furth* for habitual offender sentencing by stating that RCW 9.94A, which includes the persistent offender law, provides for a different procedure: prior convictions need only be proved by a preponderance of the evidence. Majority at 682. However, this overlooks the fact that *Furth's* constitutional determination rests on state constitutional law, not on statutory language. As the court in *Furth* noted, "the omission from the present habitual criminal statute . . . of the provision for trial by jury . . . did not thereby divest the appellant of his right to trial by jury of the disputed issues of fact." *Furth,* 5 Wn.2d at 19. The *Furth* court determined that the process

required under the Washington Constitution before a court may impose an enhanced penalty based on prior conviction is that the two predicate facts—(1) the existence of the prior convictions and (2) the identity of the subject of those convictions—be decided by a jury. Thus, this state's constitution requires such a process *regardless* of the procedure outlined by statute.

It is fundamental that due process requires the court to review the fairness of a governmental decision-making process. 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 14.6 (2d ed. 1992). This review is required whether procedures are prescribed by the Legislature, or whether the statute is silent regarding procedures.

> "Due process of law" has been well defined to be "law in its regular course of administration through courts of justice." (2 Kent's Com. 13). It is provided for, if the statute, under judicial examination, provides for the regular administration of its provisions by the courts of the state. (*Sheppard v. Steele*, 43 N.Y. 52.) It means that every citizen shall have his day in court and that he shall have the benefit of those rules of the common law, generally deemed to be fundamental in their nature because sanctioned by reason, by which judicial trials are governed. These rules, which secure to the accused a judicial trial, it is beyond the power of the legislature to subvert. (*Wynehamer v. People*, 13 N.Y. 378, 447.) It is beyond its power to deprive a person of his liberty, or to deprive him of his property, by mere legislation. . . . [These rights] are preserved to all persons by the Constitution of the state and it is the duty of the judicial branch of the government to uphold them whenever brought into question.

*People v. Sickles*, 156 N.Y. 541, 547-48, 51 N.E. 288 (1898) (cited in *State v. Dale*, 110 Wash. 181, 184, 188 P. 473 (1920)).

The provision in the Sentencing Reform Act of 1981 relied upon by the majority, which provides that criminal history may be proven by a preponderance of evidence, simply does not answer the issue in this case. While the

use of the preponderance standard meets constitutional concerns when the sentence being imposed is within the statutory maximum, it does not suffice when the sentencing enhancement results in a sentence which exceeds the statutory maximum available for the crime. *State v. Ammons,* 105 Wn.2d. 175, 185-86, 713 P.2d 719, 718 P.2d 796 (recognizing the right to proof beyond a reasonable doubt when sentence is beyond the statutory maximum), *cert. denied,* 479 U.S. 930 (1986). The distinction recognized by this court in *Ammons* is ignored by the majority in this case.

The majority also discounts the case law developed in this State regarding sentencing enhancements in general. In *Ammons,* this court stated:

> We recognize that in some proceedings we have required that the State prove the existence of prior convictions beyond a reasonable doubt when a sentence beyond the statutory maximum or a mandatory additional sentence could be imposed. *See State v. Tongate,* 93 Wn.2d 751, 754, 613 P.2d 121 (1980) (deadly weapon enhancement); *State v. McKim,* 98 Wn.2d 111, 117, 653 P.2d 1040 (1982) (knowledge that codefendant armed with a deadly weapon); *State v. Murdock,* 91 Wn.2d 336, 340, 588 P.2d 1143 (1979) (proof of prior convictions in habitual criminal proceedings); *State v. Nass,* 76 Wn.2d 368, 370, 456 P.2d 347 (1969) (proof of sale of narcotics to a minor to impose a greater sentence).

*Id.* at 185-86.

In *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980), this court stated the rule in Washington regarding sentencing enhancement statutes.

> Our cases involving other enhanced punishment statutes uniformly require proof beyond a reasonable doubt to establish the facts which, if proved, will increase a defendant's penalty.
>
> . . . .

As Mr. Justice Cardozo expressed it, "The genius of our criminal law is violated when punishment is enhanced in

the face of a reasonable doubt as to the facts leading to enhancement." *People v. Reese*, 258 N.Y. 89, 101, 179 N.E. 305, 79 A.L.R. 1329 (1932). *Id.* at 754-55.

The majority abandons this long established principle of law in Washington, saying that the principle is based on federal case law. A review of the Washington cases, as well as the development of constitutional analysis by the U. S. Supreme Court, demonstrates the majority's error.

Turning first to this court's decision in *Tongate*, it should be noted that the cases relied on by this court in announcing the above criminal law principle were Washington cases: *State v. Murdock*, 91 Wn.2d 336, 588 P.2d 1143 (1979), *State v. Furth* 5 Wn.2d 1, and *State v. Harkness*, 1 Wn.2d 530, 543, 96 P.2d. 460 (1939). *Murdock*, while citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), first cited its own decision in *Furth. Murdock*, 91 Wn.2d at 340. For the majority to reject the defendant's state constitutional argument because the cases he cites "relied upon federal authority for their holdings," and then to cite *Murdock*, ignores defendant's very real state constitutional challenge. Majority at 680.

*Murdock* is the only case cited by the defendant which the majority even addresses. There are several others which, when reviewed, will demonstrate that the due process requirements for imposition of enhanced sentences are based in the Washington Constitution. In *State v. Nass*, 76 Wn.2d 368, 456 P.2d 347 (1969) this court stated:

> It is the rule that, where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, the issue of whether that factor is present must be presented to the jury upon proper allegations and a verdict thereon rendered before the court can impose the harsher penalty.

*Id.* at 370. In support of this rule, the *Nass* court cited *State v. Dericho*, 107 Wash. 468, 182 P. 597 (1919), *State v. Dale*, 110 Wash. 181, 188 P. 473 (1920), *State v. Magnusson*, 128 Wash. 541, 223 P. 325, *aff'd*, 130 Wash. 706, 226

P. 1119 (1924), and *State v. Harkness*, 1 Wn.2d 530, 96 P.2d 460 (1939). Both *Dericho* and *Dale* rely on opinions from other jurisdictions in which those courts relied on their own state constitutions, *see State v. Findling*, 123 Minn. 413, 144 N.W. 142 (1913) (decided on Minnesota Constitution) (cited in *Dericho*, 107 Wash. at 470); *People v. Sickles*, 156 N.Y. 541, 51 N.E. 288 (1898) (decided on New York Constitution) (cited in *Dale*, 110 Wash. at 184), thus indicating the Washington court was addressing an issue of state constitutional dimension.

The rule articulated in *Nass* was reiterated in *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972), when this court decided that a defendant facing a deadly weapon allegation which enhanced his punishment had the right to a proper allegation, presentation to the jury, and an adverse decision before an enhanced sentence could be imposed. *Id.* at 633-35 (citing *Nass*, 76 Wn.2d 368).

Contrary to the majority's conclusion, the due process protections afforded by the courts of this state for a defendant facing enhanced penalties based either on prior convictions which exceed the statutory maximum or where enhancement statutes mandate additional penalties are based on state constitutional and common law considerations. This is clear not only from the language of Washington's cases, but also from the development of federal constitutional analysis by the U. S. Supreme Court.

In an early decision by the U.S. Supreme Court, *Barron v. Mayor & City Council of Baltimore*, 32 U.S. 243, 8 L. Ed. 672 (1833), the Court ruled that the first 10 amendments to the federal constitution were not applicable to the states, but instead, were designed as a check on the new national government. *See* 2 ROTUNDA & NOWAK, § 14.2 at 346. Thus, the rights guaranteed therein were not available to a citizen challenging state action. In 1938, the Court suggested that the first 10 amendments (also referred to as the Bill of Rights) might be applicable through the Due Process clause of the Fourteenth Amendment to the United States Constitution. *United States v.*

*Carolene Prods. Co.*, 304 U.S. 144, 58 S. Ct. 778, 82 L. Ed. 1234 (1938). The Court has not, even yet, adopted a total incorporation analysis, but has elected to selectively incorporate the specific rights articulated in the Bill of Rights. For example, the Fifth Amendment right to protection against double jeopardy was not applied to the states until 1969 in *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Sixth Amendment guarantee to a jury trial was not applied to the states until 1968 in *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, *reh'g denied*, 392 U.S. 947 (1968).

The Washington cases which dictate the process due a persistent or habitual offender facing an enhanced sentence which exceeds the maximum statutory sentence precede the application of the federal due process protections to the states through the Fourteenth Amendment.

Finally, it is important to recognize that in construing the right to a jury under Const. art. I, § 21, this court has stated repeatedly it "preserves the right as it existed at common law in the territory at the time of its adoption." *Pasco v. Mace*, 98 Wn.2d 87, 96, 653 P.2d 618 (1982). *See also State v. Schaaf*, 109 Wn.2d 1, 743 P.2d 240 (1987); *State v. Hobble*, 126 Wn.2d 283, 892 P.2d 85 (1995). Moreover, in *Schaaf*, this court gave considerable weight to a 70-year practice regarding the trial of juveniles when considering the *Gunwall* factor relating to pre-existing state law. *Schaaf*, 109 Wn.2d at 14. In this case, history vividly demonstrates that at the time the state constitution was adopted an individual facing an enhanced sentence based on prior convictions had the right to notice by information, the right to a jury trial, and the right to proof beyond a reasonable doubt. In addition, these rights have been provided in practice in Washington for *over 90 years. See Furth*, 5 Wn.2d at 6 (prosecutors have continued same practice since 1903); *State v. Ward*, 123 Wn.2d 488, 513, 869 P.2d 1062 (1994) (outlining the constitutional right to an information, a jury trial, and proof beyond a reasonable doubt for defendant facing enhanced penalty as a habitual offender).

There is little new under the sun and a review of history shows that the persistent offender law, despite its catchy title—Three Strikes and You're Out—is no exception. The right to an information alleging the defendant is a persistent offender, the right to have the prosecutor exercise discretion in that determination, the right to a jury trial and proof beyond a reasonable doubt of the allegation have been guaranteed by this state's case law and constitution since statehood and should not be tossed aside simply because an old law receives a new name.

JOHNSON and SANDERS, JJ., concur with MADSEN, J.

SANDERS, J. (dissenting) — I join Justice Madsen's dissent, however, write separately to restate my view expressed in my dissenting opinion in *State v. Rivers*, 129 Wn.2d 697, that the "Persistent Offender Accountability Act," also known as "Three Strikes and You're Out," unconstitutionally imposes cruel punishment contrary to Washington Constitution article I, section 14, and is therefore invalid on its face.

Reconsideration denied October 24, 1996.