107 P.3d 98 (2005)
Ralph GAUSVIK, Appellant,
v.
Timothy ABBEY, individually, and in his official capacity; Laurie Alexander, individually, and in her official capacity; Kate Carrow, individually, and in her official capacity; State of Washington, by and through its subdivision, Department of Social and Health Services, Respondents.
No. 31054-6-II.
Court of Appeals of Washington, Division 2.
January 25, 2005.
Publication Ordered February 23, 2005.
*101 Tyler K. Firkins, John Stocks, Van Siclen Stocks & Finkins, Auburn, WA, for Appellant.
Jeffrey A.O. Freimund, Ofc of Atty Gen Torts Div, Olympia, WA, for Respondent.
Patrick G. Mcmahon, Attorney at Law, Wenatchee, WA, for Other Party.
BRIDGEWATER, J.
¶ 1 Ralph Gausvik appeals from a summary judgment in favor of the Department of Social and Health Services and three social workers for their part in a child abuse investigation. Although Gausvik was convicted of criminal charges, the State dismissed all charges after Division Three of this court ordered a reference hearing based on his personal restraint petition.
¶ 2 We hold that the statute of limitation bars Gausvik's action for negligent investigation. In applying the statute of limitations, we hold that Gausvik's claim began in December 1995, when the court sentenced him for child rape and child molestation, not when his conviction was invalidated in June 2000. Even though he was incarcerated, RCW 4.16.190 only tolls the statute of limitations when he was imprisoned before sentencing, not while he is serving a sentence; it satisfies the rational basis test and is constitutional. Collateral estoppel also bars his claim because the federal court decided the statute of limitations claim and the constitutionality of RCW 4.16.190.
¶ 3 We also hold that Gausvik's cause of action for damages under 42 U.S.C. § 1983 fails because the decisions to arrest and prosecute him were not made by the DSHS workers but by the police and prosecutor and thus he failed to show proximate cause. Additionally, the DSHS social workers had qualified immunity. We affirm.

FACTS

A. Sexual Abuse Charges
¶ 4 On March 13, 1995, Donna Everett, a 10-year-old girl, told Wenatchee Police Detective Robert Perez and Child Protective Services (CPS) social workers Kate Carrow and Laurie Alexander that Gausvik and his girlfriend, Barbara Garaas, had sexually abused Donna and the couple's children, Travis, Troy, Delilah, and Christa Garaas.[1]
¶ 5 Carrow consulted with her supervisor, Tim Abbey, and decided that because of the number of disclosures Donna made and the limited resources available to investigate, Carrow would not begin the investigation of the disclosures pertaining to Gausvik and Garaas until May.
*102 ¶ 6 Carrow began her investigation on May 30, 1995, by interviewing Delilah Garaas at her school. Detective Perez accompanied Carrow to the interview. At the time of the investigation, Delilah was seven years old.
¶ 7 The interviewers asked Delilah if any abuse happened at her home and Delilah stated, "It never happened at our home. My mom touched no one." 11 Clerk's Papers (CP) at 2060.
¶ 8 That same day, Detective Perez and Carrow went to the home of Garaas and Gausvik. Travis, then 14; Christa, then 4; and Barbara Garaas were home.
¶ 9 Carrow noted that the house was unclean and smelly and that the bathroom was particularly dirty. In her notes, Carrow detailed the filthy kitchen and unkempt nature of the house. Detective Perez and Carrow told Garaas about the interview with Delilah. Garaas denied any involvement in sexual abuse. Detective Perez then spoke with Travis and he denied any abuse.
¶ 10 Carrow offered Garaas and Gausvik the option of entering into a voluntary placement agreement (VPA) pending further investigation instead of having a dependency petition filed and having a shelter care hearing. Carrow noted in her notes the need for further investigation of the abuse allegations. She then completed a temporary custody notification form notifying Garaas and Gausvik that the Wenatchee Police Department took their children into custody and advising the parents of their due process rights.
¶ 11 The next day, Carrow met with Gausvik and Garaas to further discuss if they would agree to a voluntary placement of their children to allow for further investigation, including interviews with their other children. Garaas and Gausvik signed a VPA, allowing for a two-week, out-of-home placement of their children.
¶ 12 On May 31, 1995, Carrow spoke to the children's foster mother, Mickie Reyes. Reyes had picked the children up the day before at the Gausvik home. She told Carrow that Christa's teeth were "completely rotten" and that she still used a baby bottle. 12 CP at 2264. She described a six- to eight-inch mat in Delilah's hair, consisting of cobwebs and a spider that took hours to remove. Reyes also stated that Troy, who suffered from cerebral palsy, had improper shoes and required surgery.
¶ 13 Detective Perez and Carrow interviewed Troy on June 5. Troy was 11 years old at the time of the interview. He disclosed that his mother, father, and other adults sexually abused him.
¶ 14 On that same day, Detective Perez and Carrow received notice that Gausvik and Garaas had revoked the VPA. Detective Perez ordered that the children's removal continue. Carrow prepared another temporary custody notification form notifying the parents of the second removal decision by the Wenatchee Police Department and that a shelter care hearing would occur on June 7.
¶ 15 Carrow filed dependency petitions on June 6. The petitions alleged both neglect and child abuse as reasons for removing the children.
¶ 16 On June 7, the court continued the shelter care hearing to June 15. The court ordered that Gausvik and Garaas have no contact with their children before the June 15 hearing.
¶ 17 Tim Abbey and Carrow interviewed Travis on June 12. Travis described instances of sexual abuse by others, including a man named "Philipe," but he did not mention any abuse by his mother or Gausvik. 11 CP at 2099. He stated that he told his parents about the abuse but that "they did not believe [him]." 11 CP at 2099.
¶ 18 A contested shelter care hearing occurred on June 15. Reyes testified about her observations of the children when removed from the Gausvik home and their improvements since removal. She also related that Troy said, "I french kiss my mom" while watching someone kiss on television. 11 CP at 2039.
¶ 19 Gausvik testified about being unemployed since the end of 1993. He also stated that when Delilah had a bad dream, she would sleep with him and Troy. Gausvik further explained that Philipe occasionally stayed overnight at the Gausvik house until sometime in May 1995. He denied that any *103 of the children had told him that Philipe had abused them, and he testified that he did not believe the children's disclosures of abuse.
¶ 20 The court found neglect "by cumulative effect," listing several reasons for its finding. 11 CP at 2044. The court further ordered the parents to have no contact with the children until the next scheduled court hearing.
¶ 21 Dr. James Jantzen, the Gausvik family doctor, examined Travis and Troy on June 29. The doctor concluded that both boys had decreased sphincter tone, which was "suggestive of but not specific for sexual abuse, specifically rectal penetration." 11 CP at 2117-18. The doctor also examined Delilah and Christa on July 5. Dr. Jantzen concluded that Delilah's examination was "consistent with vaginal and rectal penetration, with marked dilatation of the rectum in particular." 11 CP at 2119. Christa's examination was "consistent with rectal penetration." 11 CP at 2122. The doctor concluded that Christa's vaginal examination was "probably normal," but he could not rule out past vaginal penetration. 11 CP at 2122.
¶ 22 After receiving Dr. Jantzen's conclusions, Detective Perez discussed the case with the prosecutor and they decided that probable cause now existed to arrest Gausvik and Garaas "on suspicion of child rape." 11 CP at 2067. On July 7, the police arrested Gausvik and Garaas.
¶ 23 On September 15, the State filed an amended information charging Gausvik with six counts of child rape or molestation involving Travis, Troy, and Delilah as victims. On October 19, the State filed a second amended information charging Gausvik with eight counts of raping or molesting Travis, Troy, and Delilah.
¶ 24 On November 1, the State filed a third amended information again charging Gausvik with eight counts of raping or molesting his children. The State subsequently filed a fourth amended information later that day, reducing the child rape and child molestation counts to six. A jury found Gausvik guilty on all six counts set forth in the fourth amended information. A sentencing court sentenced Gausvik to 280 months in prison on December 21.
¶ 25 The court held a fact-finding hearing on December 1, to determine the dependency of the Gausvik children. The parties entered agreed disposition orders on December 7. After a hearing, the juvenile court terminated Gausvik's rights over Troy, Delilah, and Christa on April 21, 1997.
¶ 26 Division Three of this court granted Gausvik a fact-finding reference hearing on his personal restraint petition (PRP) related to his criminal conviction on June 5, 2000. Gausvik's PRP challenged the reliability of his children's abuse disclosures.
¶ 27 The State stipulated to dismissal of the charges against Gausvik because it felt it could not prevail in the matter based on the court's prior rulings involving other defendants charged with sexually abusing children in the Wenatchee area. In those cases, the parties questioned the interview techniques Detective Perez used during the investigation. Gausvik was released from prison on June 28, 2000.

B. Procedural History
¶ 28 In March 2001, Gausvik sued police officials, prosecutors, and his criminal defense lawyers in federal court. The federal court dismissed all of Gausvik's claims except his 42 U.S.C. § 1983 claim against Detective Perez. Gausvik v. Perez, 239 F.Supp.2d 1047 (E.D.Wash.2002), Gausvik v. Perez, 239 F.Supp.2d 1067 (E.D.Wash.2002), and Gausvik v. Perez, 239 F.Supp.2d 1108 (E.D.Wash.2002). The court held that the statute of limitations barred all of Gausvik's state tort law claims.
¶ 29 In May 2001, after the decisions in his federal court case, Gausvik sued Tim Abbey, Laurie Alexander, Kate Carrow, and the Department of Social and Health Services for the State of Washington (DSHS).[2] He alleged nine causes of action against Abbey: a 42 U.S.C. § 1983 claim for deprivation of federal constitutional rights; negligent investigation; outrage; negligent infliction of emotional distress; negligent supervision and *104 training; malicious prosecution; false arrest; false imprisonment; and intentional interference with family relationships.
¶ 30 Abbey filed a motion for summary judgment on November 8, 2002. He argued that he was entitled to summary judgment because of qualified immunity; insufficient evidence of proximate cause; and the statute of limitations. The trial court divided Abbey's summary judgment motion into four parts, with four separate hearings. The first hearing was on the statute of limitations defense to Gausvik's state tort law claims. The trial court found that the statute of limitations barred Gausvik's state law claims. In the alternative, the court found that the doctrine of collateral estoppel barred Gausvik from relitigating his defense to the statute of limitations.
¶ 31 The trial court next considered Abbey's absolute and qualified immunity defenses to Gausvik's § 1983 claim. The court denied Abbey's motion on the ground of absolute immunity but granted summary judgment on Abbey's qualified immunity defense.
¶ 32 The third hearing involved the Babcock[3] immunity defense and Gausvik's inability to establish proximate cause and other elements of his claim. The court ruled that Gausvik had not established a causal link based on In re Scott County Master Docket, 672 F.Supp. 1152 (D.Minn.1987), aff'd sub nom., Myers v. Scott County, 868 F.2d 1017 (8th Cir.1989); Cunningham v. City of Wenatchee, 214 F.Supp.2d 1103 (E.D.Wash.2002), and Tyner v. State Dep't of Soc. & Health Servs., 141 Wash.2d 68, 1 P.3d 1148 (2000). The court denied summary judgment based on Babcock immunity. The court then dismissed Gausvik's claims for false arrest, false imprisonment, malicious prosecution, negligent supervision, and negligent training. The court further ruled that Gausvik failed to establish essential elements in his claims of outrage, negligent infliction of emotional distress, and intentional interference with family relations.
¶ 33 The final hearing on Abbey's motion for summary judgment dealt with the collateral estoppel defense based on the prior dependency and criminal proceedings. The trial court denied Abbey's motion based on the principles of collateral estoppel.
¶ 34 Gausvik moved for reconsideration on the statute of limitations defense and Carrow's entitlement to qualified immunity from his § 1983 claim. The court denied Gausvik's motion. Gausvik now appeals.

ANALYSIS

I. Standard of Review
¶ 35 We review a grant of summary judgment de novo. Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). We engage in the same inquiry as the trial court, viewing all facts and inferences in a light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c). We will affirm a grant of summary judgment where reasonable minds can reach only one conclusion based on the admissible facts in evidence. Smith v. Safeco Ins. Co., 150 Wash.2d 478, 485, 78 P.3d 1274 (2003).

II. Statute of Limitations
¶ 36 Gausvik argues that the trial court erred in granting summary judgment to Abbey because the statute of limitations did not bar his state tort law claims. He makes three arguments: (1) the trial court erred when it found his claims accrued at the time of his sentencing in December 1995, instead of when the State dismissed the charges in June 2000; (2) the trial court erred when it found RCW 4.16.190 constitutional; and (3) the trial court erred by concluding that he was collaterally estopped from relitigating the applicability of the statute of limitations to his claims. Gausvik's arguments are meritless and thus fail.

*105 A. Accrual of Time
¶ 37 Gausvik contends that his claim could not have accrued until his conviction was invalidated. But under RCW 4.16.190 and Washington case law, an action accrues when the factual basis for the action becomes known to the party bringing the action.
¶ 38 Generally, the statute of limitations begins to run when a party has a right to apply to a court for relief. U.S. Oil & Refining Co. v. State Dep't of Ecology, 96 Wash.2d 85, 91, 633 P.2d 1329 (1981). To apply for relief, each element of the cause of action must be susceptible of proof. Haslund v. City of Seattle, 86 Wash.2d 607, 619, 547 P.2d 1221 (1976). A plaintiff cannot maintain a negligence action, and the statute of limitations will not begin to run, until the plaintiff has suffered "actual and appreciable" damage. Haslund, 86 Wash.2d at 620, 547 P.2d 1221. RCW 4.16.080(2) provides a three-year limitation period for personal injury actions. Actions for false imprisonment and false arrest have a two-year limitation period. RCW 4.16.100(1).
¶ 39 RCW 4.16.190 states in part: "[i]f a person entitled to bring an action mentioned in this chapter, except for a penalty or forfeiture, ... be at the time the cause of action accrued ... imprisoned on a criminal charge prior to sentencing, the time of such disability shall not be a part of the time limited for the commencement of action." In a deposition taken on October 15, 2002, Gausvik admitted that he knew he had experienced damage in December 1995. He stated that by May 1995, he believed that Abbey had wronged him by taking away his children. Under the statute, once the court sentenced Gausvik in December 1995, the statute began to run. Gausvik had from December 1995 to December 1998 to file his state tort law claims. He waited until May 2001, almost three years later.
¶ 40 Gausvik suggests that a cause of action does not accrue until a plaintiff can legally prove his case. Even under Gausvik's interpretation of the law, the statute of limitations barred his claims. Gausvik admitted that he knew the factual basis for his claim in 1995. At the time the court sentenced him in December 1995, Gausvik had experienced "actual and appreciable" damage; i.e., his loss of freedom. Haslund, 86 Wash.2d at 620, 547 P.2d 1221.
¶ 41 He further contends he could not establish proximate cause and injury until the invalidation of his conviction in June 2000. But the dismissal of Gausvik's criminal conviction had no effect on his state tort law cause of action. Gausvik, 239 F.Supp.2d at 1105.
¶ 42 Our recent decision in Petcu v. State, 121 Wash.App. 36, 86 P.3d 1234 (2004), is analogous. In Petcu, Petcu sued the State of Washington; CPS; DSHS; and Kyle Smith, a CPS caseworker, for negligent investigation, negligent placements, and for a violation of his civil rights under 42 U.S.C. § 1983. Petcu, 86 P.3d at 1242. DSHS moved for summary judgment and also argued that the statute of limitations barred Petcu's claims. Petcu, 86 P.3d at 1242-43. The trial court granted summary judgment to DSHS. Petcu, 86 P.3d at 1244.
¶ 43 On appeal, we held that the doctrine of collateral estoppel "may have reduced Petcu's chances of prevailing" but it did not preclude Petcu from filing his lawsuit. Petcu, 86 P.3d at 1252. We further stated that "Petcu could have either challenged the applicability of collateral estoppel or sought a stay of his civil suit pending appellate resolution of the dependency." Petcu, 86 P.3d at 1253.
¶ 44 The same ruling applies here. Case law does not support Gausvik's argument that he had to wait for his conviction to be overturned before filing suit. His original complaint against Abbey alleged violation of his rights based on false imprisonment and negligent investigation. Gausvik knew in 1995 that the techniques used by those involved in the investigation of sexual abuse allegations may have led to children alleging abuse that never occurred. Thus, the factual basis for Gausvik's claim arose in 1995, and the statute of limitations began to run at that time. Gausvik did not file his claim until May 2001. The three-year statute of limitations clearly bars his claim.
*106 ¶ 45 Finally, Gausvik's reliance on Horn v. Bailie, 309 F.2d 167 (9th Cir.1962), is misplaced. In Horn, the Ninth Circuit held that because Horn's conviction was obtained through constitutional violations, his sentence was void. Horn, 309 F.2d at 168. The court found that Horn's imprisonment did not occur because of the execution of a sentence but instead was on a criminal charge and because of that, the statute was tolled. Horn, 309 F.2d at 168. The court further stated that "a sentence obtained through violation of constitutional rights is a nullity." Horn, 309 F.2d at 168.
¶ 46 Horn does not apply to Gausvik's case. Gausvik argues that his sentence was vacated because of constitutional violations. What in fact happened was that his PRP resulted in a remand for a reference hearing. Because the State feared they would not be able to convict Gausvik, they dismissed all charges against him. No court found that his convictions were based on constitutional violations. Since there was no proven constitutional violation, there was no nullity.

B. RCW 4.16.190
¶ 47 Gausvik next contends that RCW 4.16.190 is unconstitutional because it creates two classes of convicted criminal defendants. He argues that the 1993 amendment to the statute is overbroad and unconstitutional.
¶ 48 We review a challenge to the equal protection doctrine by first determining the appropriate level of scrutiny to apply to the challenged statute. State v. Manussier, 129 Wash.2d 652, 672-73, 921 P.2d 473 (1996), cert. denied, 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997). In this case, minimal scrutiny applies because this case does not involve a suspect or semi-suspect class and does not involve a fundamental right. Manussier, 129 Wash.2d at 673, 921 P.2d 473. Under minimal scrutiny, we apply the rational relationship test to the challenged statute. Manussier, 129 Wash.2d at 673, 921 P.2d 473. To survive review, the government must demonstrate a rational relationship between the legislative purpose and the classification. Manussier, 129 Wash.2d at 673, 921 P.2d 473.
¶ 49 To prevail before this court, Gausvik has to show that: (1) the classification applies unequally to those within a class; (2) no real basis exists for distinguishing between classes; and (3) the classification bears no rational relation to the statute's purpose. Paulson v. Pierce County, 99 Wash.2d 645, 653, 664 P.2d 1202, appeal dismissed, 464 U.S. 957, 104 S.Ct. 386, 78 L.Ed.2d 331 (1983).
¶ 50 RCW 4.16.190 applies to those "imprisoned on a criminal charge prior to sentencing." Gausvik argues that the statute creates pre-sentence and post-sentence classifications. Gausvik provides no other authority to support his argument that RCW 4.16.190 creates two classifications of convicted criminal defendant. Here, the designated class of all persons who have been convicted and sentenced to prison are treated the same. Thus, the first prong of the test is met.
¶ 51 Next, a real basis exists for distinguishing between classes. Both the trial court and the federal court found that the state legislature had a rational reason for finding a disability existed for people imprisoned before conviction and sentencing because the focus of their attention is on trial preparation and sentencing unlike those already convicted and sentenced. Gausvik, 239 F.Supp.2d at 1124. The second prong of the test is also met.
¶ 52 Finally, the classification does bear a rational relationship to the statute's purpose. The legislature intended to prevent the litigation of stale claims by tolling statutes of limitation only for the period of imprisonment that occurs before sentencing. Gausvik, 239 F.Supp.2d at 1124-25. Gausvik offers no evidence to show that the classification is contrary to the legislature's intent. State v. Kent, 87 Wash.2d 103, 110, 549 P.2d 721 (1976). Gausvik fails to show the unconstitutionality of RCW 4.16.190.

C. Collateral Estoppel
¶ 53 Gausvik asserts that he is not collaterally estopped from opposing Abbey's statute of limitations arguments. He contends that, even though the issue before the *107 federal court was the same as the issue before the state court, the federal court's decision did not prohibit the state court from rendering a contrary decision. Gausvik is wrong.
¶ 54 The collateral estoppel doctrine requires that a party satisfy the following elements: (1) the issue in the prior adjudication is identical to the issue presented in the second adjudication; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied. Seattle-First Nat'l Bank v. Cannon, 26 Wash.App. 922, 927, 615 P.2d 1316 (1980) (citing Lucas v. Velikanje, 2 Wash.App. 888, 894, 471 P.2d 103, review denied, 78 Wash.2d 994 (1970)). Gausvik only discusses the first element.
¶ 55 Contrary to Gausvik's argument, a federal court has concurrent jurisdiction under pendent jurisdiction principles to apply or interpret state laws. United Mine Workers v. Gibbs, 383 U.S. 715, 725-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, equal protection clauses in both the state and federal constitutions are construed identically. Manussier, 129 Wash.2d at 672, 921 P.2d 473. Gausvik cites to no authority contrary to these laws. Gausvik argues also that because his federal action is being appealed, we should take action because if we adopt collateral estoppel to bar his claim and our mandate precedes the federal appellate decision, and the federal case is overturned, Gausvik will have no state action. But an appeal does not suspend or negate the collateral estoppel aspects of a judgment entered after trial. See State v. Harrison, 148 Wash.2d 550, 561, 61 P.3d 1104 (2003) (citing Nielson by and through Nielson v. Spanaway Gen. Med. Clinic, 135 Wash.2d 255, 264, 956 P.2d 312 (1998)).
¶ 56 Gausvik litigated whether his state tort law claims were time barred and whether RCW 4.16.190 was constitutional before the federal court. Gausvik, 239 F.Supp.2d at 1104-07, 1121-25. He received a final judgment on the merits of the issue. Gausvik was a party in the federal court case. Finally, applying the doctrine will not work an injustice to Gausvik. All four elements of the doctrine of collateral estoppel are present in this case, and Gausvik is precluded from relitigating the statute of limitations issue.

III. Proximate Cause
¶ 57 Gausvik asserts that the trial court's decision regarding proximate cause was premised on an incorrect consideration of the facts. The record reveals, however, that Gausvik failed to establish both elements of proximate cause.
¶ 58 Gausvik's assertion arises from his § 1983 claim. In order to state an actionable claim, a § 1983 plaintiff must prove both cause in fact and legal causation. Arnold v. Int'l Bus. Machines Corp., 637 F.2d 1350, 1355 (9th Cir.1981). To establish a state tort liability claim, a plaintiff must show proximate cause, both cause in fact and legal cause. Johnson v. State, 68 Wash.App. 294, 298, 841 P.2d 1254 (1992), review denied, 121 Wash.2d 1018, 854 P.2d 42 (1993). Gausvik provides a significant amount of evidence but the evidence fails to establish proximate cause.
¶ 59 Gausvik sought damages under § 1983 arising from his arrest, prosecution, and incarceration for sexually abusing his children. Two federal courts have decided issues identical to these. In Scott County, 672 F.Supp. 1152, parents brought § 1983 claims against county social workers, county deputy sheriffs, and other county officials involved in the investigation of sexual abuse claims. The parents alleged that the actions of the social workers caused or contributed to the initial and continued separation of children from parents and led to the parents' arrest. Scott County, 672 F.Supp. at 1165. The Scott County court found that the final decision to arrest the parents and the final decision to remove the children from their homes were made not by the social workers but by others. Scott County, 672 F.Supp. at 1166. The court further stated that the minimal action from the social workers did not satisfy the "but for" condition necessary to prove causation. Scott County, 672 F.Supp. at 1166.
*108 ¶ 60 In Cunningham, 214 F.Supp.2d at 1113, the district court also found that the plaintiff failed to show the causation element of proximate cause. Cunningham raised issues similar to Gausvik and the court found that Cunningham had to show that the defendant social worker's actions were a cause that produced Cunningham's harm. Cunningham, 214 F.Supp.2d at 1112. The court held that Cunningham produced no evidence to show that the defendant influenced the decisions to arrest and prosecute him. Cunningham, 214 F.Supp.2d at 1113.
¶ 61 Here, the same situation exists as in Scott County and Cunningham. The decisions to arrest and prosecute Gausvik were not made by Abbey but by those involved in the criminal justice system  law enforcement officers and the prosecutor. Abbey was involved in the dependency and termination hearings but those hearings occurred after the criminal trial and were based on Gausvik's conviction and sentence.
¶ 62 Moreover, the initial decision to remove Gausvik's children was based on Kate Carrow's observations of the Gausvik home and the allegations of abuse disclosed by Delilah Garaas and Donna Everett. Carrow's notes from the first visit to the Gausvik home detail neglect of the Garaas children by their parents. Carrow noted the smell of the home, and the filthy living areas, especially the bathroom. The Gausvik children's foster mom's statements to Carrow also supported removal of the children for neglect. She told Carrow that Christa's teeth were rotten and she still used a bottle at age four. Troy, who suffered from cerebral palsy, had improper shoes and needed surgery. Finally, Delilah's hair had a six-to eight-inch mat that took hours to remove. These facts supported the removal of Gausvik's children on the grounds of neglect.
¶ 63 Gausvik also argues that even if he has failed to prove factual causation, he may be able to meet his burden under the "substantial factor" test. Cunningham, 214 F.Supp.2d at 1114. In Washington, the substantial factor test recognizes three exceptions where a plaintiff may be excused from proving the threshold requirement of cause in fact: (1) the plaintiff was excusably ignorant of the identity of the tortfeasor who caused his injury; (2) the plaintiff probably would have been injured anyway, but lost a significant chance of avoiding the injury; or (3) the plaintiff has been injured by multiple independent causes, each of which would have been sufficient to cause the injury. 14 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE SERIES: TORT LAW AND PRACTICE § 4.4 (2d ed.2000). Gausvik's contention is that exception (3) applies to his case. But the Cunningham court held that the substantial factor test did not apply in cases like Gausvik's. Cunningham, 214 F.Supp.2d at 1114.
¶ 64 Finally, Gausvik relies on Tyner, 141 Wash.2d 68, 1 P.3d 1148, for support. Gausvik asserts that the language from Tyner suggests that a grant of summary judgment was improper in this case. Gausvik focuses on the following language:
[W]hether the State has placed before the court all the information material to the decision the court must make. Concealment of information or negligent failure to discover material information may subject the State to liability even after adversarial proceedings have begun.
Tyner, 141 Wash.2d at 83-84, 1 P.3d 1148 (citing Tyner v. State Dep't of Soc. & Health Servs., 92 Wash.App. 504, 518, 963 P.2d 215 (1998), rev'd, 141 Wash.2d 68, 1 P.3d 1148 (2000)).
¶ 65 While Gausvik shows how material information was kept from courts deciding other cases, he fails to show the same situation exists here. Gausvik cannot use the language from Tyner to support his argument because there is simply no evidence in the record to suggest that information was withheld from the court when it made decisions regarding Gausvik and the children's removal. Gausvik fails to show proximate cause and the court did not err by dismissing his § 1983 claims.

IV. Qualified Immunity
¶ 66 A DSHS employee cannot be held personally liable for damages under a 42 U.S.C. § 1983 action unless their conduct violated a clearly established constitutional *109 right. Robinson v. City of Seattle, 119 Wash.2d 34, 64-65, 830 P.2d 318, cert. denied, 506 U.S. 1028, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992). Whether qualified immunity protects a defendant from liability is a question of law decided by the court. Aitken v. Reed, 89 Wash.App. 474, 486, 949 P.2d 441, review denied, 136 Wash.2d 1004, 966 P.2d 901 (1998). After a defendant asserts the qualified immunity defense, the plaintiff must show a clearly established constitutional right existed that the defendant violated. Robinson, 119 Wash.2d at 65-66, 830 P.2d 318.
¶ 67 When asked to rule on the issue of qualified immunity, we must first consider whether, after viewing the facts in the light most favorable to the plaintiff, the alleged facts amount to a violation of a plaintiff's constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the facts do not constitute a violation of a constitutional right, the inquiry ends. Saucier, 533 U.S. at 201, 121 S.Ct. 2151. If they do, then our next step is to determine if the violated constitutional right was clearly established at the time of the alleged violation. Saucier, 533 U.S. at 201, 121 S.Ct. 2151.
¶ 68 A constitutional right is clearly established where the contours of the right have been defined with specificity and sufficient clarity, as a result of decisional law or statute, so that a reasonable official would have known that his conduct violated the constitutional right. Saucier, 533 U.S. at 202, 121 S.Ct. 2151. In determining whether a clear right exists, a court should consider the legal landscape at the time of the alleged violation in order to determine if a constitutional right was clearly established. Trevino v. Gates, 99 F.3d 911, 917 (9th Cir.1996), cert. denied, 520 U.S. 1117, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997).
¶ 69 Gausvik asserts that the trial court erred when it granted summary judgment to Abbey based on qualified immunity. Specifically he argues that the trial court erred when it found that Abbey's conduct did not violate established constitutional rights and that the trial court erred when it accepted Abbey's claims as true because the record contradicts them. Gausvik's arguments fail.
¶ 70 The Ninth Circuit held in Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (2001), that a person has a clearly established constitutional right "not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Gausvik argues that the trial court erred when it did not apply Devereaux to his case. But the trial court correctly found that Gausvik's complaints focused on the investigative techniques. The Devereaux court found that a plaintiff had no constitutional right to have investigators in a child sexual abuse investigation carry out the investigation in a particular manner. Devereaux, 263 F.3d at 1075. The court further stated that allegations of improper interviewing techniques with nothing more was not enough to support a plaintiff's § 1983 claim. Devereaux, 263 F.3d at 1075. Since Gausvik's complaints solely focus on the investigation techniques utilized by Detective Perez, Abbey, and others, he fails to satisfy the first prong of the qualified immunity test.
¶ 71 Gausvik also had no right to live with his children without government interference when the government suspected child abuse. We previously held in Miles v. Child Prot. Servs., 102 Wash.App. 142, 158, 6 P.3d 112 (2000), review denied, 142 Wash.2d 1021, 16 P.3d 1266 (2001), that "there is no well-established constitutional right to the companionship of children whom one has abused or neglected, and thus made dependent, according to a final and appealable dependency judgment that one agreed to while represented by counsel." In Gausvik's case the charges of sexual abuse were dismissed. But at the time Abbey investigated Gausvik, there was reasonable cause to believe he had neglected and sexually abused his children.
¶ 72 Gausvik's children told Abbey and others that their parents had sexually abused them. One of Gausvik's children made a statement to his foster mother that he French kissed his mom. There was also Dr. Jantsen's report in which the doctor found that the boys's examination was "suggestive of but not specific for sexual abuse." 11 CP at 2117-18. After examining Delilah, he concluded *110 that her examination was "consistent with vaginal and rectal penetration, with marked dilatation of the rectum in particular." 11 CP at 2119. Finally, Dr. Jantzen concluded that Christa's examination was "consistent with rectal penetration." 11 CP at 2122. The doctor found that Christa's vaginal examination was "probably normal" but the doctor could not absolutely rule out past vaginal penetration. 11 CP at 2122.
¶ 73 No case exists that clearly establishes constitutionally adequate procedures to be used by CPS when investigating child sexual abuse allegations. Petcu, 86 P.3d at 1250. It is difficult to conclude in this case that any of the caseworkers handling Gausvik's case should have known that actions taken during their investigation violated Gausvik's constitutional right to family unity. The facts suggest that Abbey followed up on the allegations of sexual abuse by interviewing the children who admitted that their parents sexually abused them.
¶ 74 Gausvik fails to satisfy the test for qualified immunity. Abbey's actions were founded on a reasonable belief that Gausvik sexually abused his children. As such, qualified immunity protects Abbey from Gausvik's 42 U.S.C. § 1983 claim.
¶ 75 In the closing pages of Gausvik's opening brief, he lists several facts that occurred during the investigation of sexual abuse cases in Wenatchee. He argues that these facts show Abbey's knowing involvement in the acts that led to the current lawsuit. Most of the facts Gausvik lists do not involve him but involve other families who had their children removed. The facts also discuss actions Detective Robert Perez took during the investigation of the sexual abuse allegations. Gausvik sued Abbey for his role in removing Gausvik's children during Abbey's investigation of the sexual abuse allegations against Gausvik. The facts pertaining to the Everetts and others are not pertinent to this case.
¶ 76 Finally, as previously discussed, the social workers in this case were not involved in removing Gausvik's children. Garaas and Gausvik agreed to the removal, and Detective Perez insisted the children not be returned after the parents revoked the VPA. Contrary to Gausvik's argument, there is no evidence that Abbey contributed to the "manufacture of evidence against" him. Br. of Appellant at 49.
¶ 77 Affirmed.
¶ 78 A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: QUINN-BRINTNALL, C.J., and VAN DEREN, J.
NOTES
[1] Gausvik is the biological father of Troy, Delilah, and Christa Garaas. Travis has an unknown father.
[2] We refer to the State defendants collectively as "Abbey."
[3] Babcock v. State, 116 Wash.2d 596, 618, 809 P.2d 143 (1991) (creating a separate qualified immunity for state tort law claims distinct from qualified immunity for § 1983 claims).