**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| PAMELA K. SCOTT,<br><br>       Appellant,<br><br>  v.<br><br>LOUISE LOVE, WENDY STIGALL, TINA BURGESS, DENISE HINRICHSEN, MAC PEVEY, ELISABETH RASLER, LAURA AMBROSCH, ANNMARIE AYLWARD, MONICA DISTEFANO, ALLAN SOPER, DEBBIE KENDALL, DIANNE ASHLOCK, KATHY GASTREICH, DENISE VAUGHAN, ERICA GREEN, and TIM LANG, in their individual and professional capacities; WASHINGTON STATE DEPARTMENT OF CORRECTIONS; ANNA KLEIN and COLIN HAYES in their individual and professional capacities; and CLARK COUNTY PROSECUTING ATTORNEY'S OFFICE,<br><br>       Respondents. | No. 83419-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, A.C.J. — Pamela Scott appeals the dismissal of her lawsuit against the

Department of Corrections (DOC), the Clark County Prosecuting Attorney's Office

Citations and pin cites are based on the Westlaw online version of the cited material.

(CCPAO), and several individuals employed by those agencies.[1] Scott's lawsuit alleged negligent and intentional misconduct related to actions taken to amend her special sex offender sentencing alternative (SSOSA) sentence. Although we acknowledge that Scott remained under custodial supervision for approximately 10 months past her original sentence end date, she has not stated a claim upon which relief can be granted. We therefore affirm.

FACTS

On November 2, 2011, Scott pleaded guilty to three counts of first degree possession of depictions of a minor engaged in sexually explicit conduct. The standard sentencing range for Scott's offenses was 46 to 61 months of confinement. Pursuant to the plea agreement, the State asked the trial court to impose a SSOSA, 61 months in total duration, with 12 months of confinement and a 49 month suspended prison sentence. Under SSOSA, the court is authorized to suspend an offender's sentence, but it must also impose a term of confinement of up to twelve months and a "term of community custody equal to the length of the suspended sentence." RCW 9.94A.670(5)(a) and (b).

At the sentencing hearing on December 21, 2011, the court sentenced Scott to a 49-month suspended SSOSA, with the condition that she serve 366 days in confinement and remain on community custody for the length of the suspended sentence. At that time, boilerplate language on the SSOSA judgment and sentence form incorrectly indicated that the community custody portion of the sentence was to be calculated by subtracting

---

[1] On March 1, 2022, Scott filed a motion to "perfect the record," claiming that she could not confirm that this court received all briefs submitted in her appeal, particularly her reply brief to DOC. Because we have confirmed that this court received all briefs, the motion is denied.

the period of confinement from the total suspended sentence. Thus, the following day, the parties returned to court to modify the judgment and sentence by striking the 49 month sentence and writing in 61 months. The intended result was a total sentence of 61 months, consisting of 366 days of confinement plus 49 months of community custody. However, because Scott's ordered term of community custody (49 months) did not match the length of her suspended sentence (61 months), the revised judgment and sentence did not comply with RCW 9.94A.670(5).

In January 2016, after the Administrative Office of the Courts addressed the faulty language on the judgment and sentence form, DOC directed its records staff to review SSOSA sentences for possible errors. On January 26, 2016, DOC records technician Louise Love notified Clark County prosecutor Anna Klein that a "clerical error" in Scott's judgment and sentence form required DOC to reduce Scott's community custody term from 61 months to 49 months, below the term required by law. Love asked the prosecutor to "provide an amended order correcting the clerical error and providing a term of community custody consistent with RCW 9.94A.670(5)."

On February 17, 2016, Clark County prosecutor Colin Hayes filed a CrR 7.8(a) motion in superior court for an order to correct Scott's judgment and sentence on the ground that the "clerical error" resulted in an impermissibly shortened period of community supervision.[2] Over Scott's objection, on March 23, 2016, the trial court granted the motion and entered an order amending the judgment and sentence by striking the flawed language in the original form and replacing it with revised language stating that "the court places the defendant on community custody under the charge of DOC for the length of

---

[2] CrR 7.8(a) provides that "[c]lerical mistakes in judgments . . . arising from oversight or omission may be corrected by the court at any time."

the suspended sentence." The order specified that the amended language "provides for community custody consistent with the suspended sentence not the sentence remaining. The suspended sentence was for 61 months therefore the community custody is for 61 months."

Scott appealed the amended judgment and sentence, arguing that the trial court lacked authority to modify it under CrR 7.8(a) because the alleged error was not clerical. While Scott's appeal was pending, Hayes filed a motion to revoke Scott's SSOSA. The motion was based on a report from Scott's community corrections officer (CCO) that was issued approximately one month before the end date for Scott's original term of community custody. In the report, the CCO stated "[t]here [is] currently no documentation that supports Scott has completed" a court-ordered mental health evaluation and certified victim awareness class. Hayes offered to withdraw the revocation motion if Scott agreed to withdraw her appeal, reasoning that this "would ensure that [Scott] has the opportunity to complete the remaining requirements before the expiration of community custody." Scott quickly came into compliance with her SSOSA conditions, and the State withdrew the revocation motion.

In September 2016, Scott filed a tort claim form with the Office of Risk Management, alleging that DOC and the Clark County prosecutors' actions and omissions caused her to be wrongfully sentenced to an additional year of community custody. The Attorney General's Office (AGO) immediately notified DOC of Scott's claim.

In May 2017, the State conceded that the trial court had erred by amending the judgment and sentence under CrR 7.8 because it corrected a mistake of law, not a clerical

error.[3]  The State asked the appellate court to remand Scott's case to the trial court with instructions to strike the amended judgment and sentence, thereby returning Scott to the shorter period of community custody.  The appellate court agreed, and remanded the case.  On June 20, 2017, the trial court struck the March 2016 order amending Scott's judgment and sentence.  Scott's sentence reverted to the original period of community custody, and she was released from supervision.

On May 31, 2019, Scott filed a complaint in the superior court against DOC and numerous DOC employees (collectively, the DOC defendants) as well as Clark County and prosecuting attorney Colin Hayes (collectively, the Clark County defendants).[4]  Scott asserted claims of (1) false imprisonment, (2) violations under article I, sections 3, 7, 9, and 14 of the Washington Constitution, (3) civil rights violations under 42 U.S.C. § 1983, and (4) intentional infliction of emotional distress and outrage.  Scott asserted that she told the defendants her amended sentence was illegal, yet they did nothing to cure the error, thus forcing her to remain on community custody 10 months past her original sentence end date in violation of her constitutional rights.  Scott also alleged that Hayes's baseless, vindictive threat to revoke her SSOSA unless she dropped her appeal violated her constitutional rights and caused severe emotional distress.  Scott sought monetary damages and injunctive relief.

The DOC defendants moved to dismiss Scott's complaint under CR 12(b)(6), arguing that (1) they had no authority to override or disregard the amended judgment and

---

[3] See State v. Morales, 196 Wn. App. 106, 118, 383 P.3d 539 (2016) ("Errors that are not clerical are characterized as judicial errors, and trial courts may not amend a judgment under CrR 7.8 for judicial errors.").

[4] Although Scott's complaint named Clark County prosecutor Anne Klein, Scott subsequently indicated that she is no longer asserting a claim against Klein.

sentence, (2) no private right of action exists under the Washington Constitution, and (3) they are entitled to qualified immunity. The Clark County defendants also moved to dismiss Scott's claims because the claims were barred by prosecutorial immunity or were not cognizable under § 1983.[5]

The trial court dismissed Smith's claims with prejudice. The court denied Scott's motion to amend her complaint to add Judge Stahnke as a defendant, stating that "such addition would be futile because of the doctrine of judicial immunity." The court awarded $200 in attorney fees and costs to the DOC defendants and the Clark County defendants.[6] Scott appeals.

## ANALYSIS

Scott asserts that the trial court erred by (1) dismissing her § 1983 claim against Love, (2) dismissing her false imprisonment claim against the DOC defendants, (3) dismissing Hayes on the basis of prosecutorial immunity, (4) denying her motion to amend the complaint to add, as a defendant, the superior court judge who signed the amended judgment and sentence, (5) dismissing her claims with prejudice instead of giving her an opportunity to amend her complaint, and (6) failing to issue written findings of fact and conclusions of law.[7] Although we acknowledge that Scott remained under custodial

---

[5] A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To establish a § 1983 claim against a municipality, a plaintiff must (1) identify a specific policy or custom, (2) demonstrate that the policy was sanctioned by the official or officials responsible for making policy in that area of the city's business, (3) demonstrate a constitutional deprivation, and (4) establish a causal connection between the custom or policy and the constitutional deprivation. Baldwin v. City of Seattle, 55 Wn. App. 241, 248, 776 P.2d 1377 (1989).

[6] Although Scott's notice of appeal stated that she was seeking review of the cost orders, her briefing does not address them. A party is deemed to have waived any issues that are not raised as assignments of error and argued by brief. State v. Sims, 171 Wn.2d 436, 441, 256 P.3d 285 (2011).

[7] Scott appears to concede that no private right of action exists under the Washington Constitution. See Blinka v. Wash. State Bar Ass 'n, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001)

supervision for approximately 10 months past her original release date, we find no basis to reverse the trial court's rulings.

A. Standard of Review

Under CR 12(b)(6), a complaint can be dismissed for "failure to state a claim upon which relief can be granted." We review CR 12(b)(6) dismissals de novo. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). "A CR 12(b)(6) motion challenges the legal sufficiency of the allegations in a complaint." McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 226, 370 P.3d 25 (2016). We view all facts alleged in the complaint as true and may consider hypothetical facts supporting the plaintiff's claim. FutureSelect, 180 Wn.2d at 962. "But the court is not required to accept the complaint's legal conclusions as true." Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 717-18, 189 P.3d 168 (2008). Dismissal under CR 12(b)(6) is appropriate where the plaintiff cannot prove any set of facts consistent with the complaint that would entitle the plaintiff to relief. Bravo v. Dolsen Cos., 125 Wn.2d 745, 750, 888 P.2d 147 (1995).

B. Dismissal of DOC Defendants

Scott first argues that she stated a valid civil rights claim against DOC records technician Louise Love.[8] "42 U.S.C § 1983 'is not itself a source of substantive rights,' but rather provides 'a method of vindicating federal rights elsewhere conferred.'" Citoli v. City of Seattle, 115 Wn. App. 459, 487, 61 P.3d 1165 (2002) (quoting Graham v. Connor,

---

("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation[.]'") (alteration in original).

[8] Although Scott expressly acknowledges that she did not bring a § 1983 claim against DOC, her arguments appear to address all of the DOC defendants.

490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). The plaintiff "must establish that a federally protected constitutional or statutory right has been violated by state action or persons acting under color of state law." Van Blaricom v. Kronenberg, 112 Wn. App. 501, 508, 50 P.3d 266 (2002). "In order to state an actionable claim, a § 1983 plaintiff must prove both cause in fact and legal causation." Gausvik v. Abbey, 126 Wn. App. 868, 885, 107 P.3d 98 (2005).

Scott argues that Love violated her civil rights by initiating a time-barred appeal of her judgment and sentence. She points out that RCW 9.94A.585(7) authorizes DOC to petition for review of a sentence for errors of law, but requires any such petition to be filed no later than 90 days after DOC has actual knowledge of the terms of the sentence. Scott further argues that the DOC defendants are liable for failing to properly train and supervise Love.

Love, however, did not petition the court to review Scott's sentence under RCW 9.94A.585(7). Rather, she notified the Clark County prosecutor that Scott's sentence appeared to violate RCW 9.94A.670(5)(a) and (b) because the suspended sentence and the length of community supervision were not the same. Although Love apparently believed that the faulty language in the form judgment and sentence fell within the definition of a clerical error, the act of notifying the prosecutors of the apparent error in Scott's judgment and sentence was not wrongful. Neither Love nor any other DOC defendant filed the CrR 7.8 motion to amend Scott's judgment and sentence, or granted that motion. The DOC defendants did not cause Scott to serve additional time on community custody.

Scott, relying on Haygood v. Younger, 769 F.2d 1350, 1359 (9th Cir. 1985), argues that DOC is liable for failing to end her supervision despite being on notice by September 2016 that Scott believed her amended sentence was illegal. In Haygood, prison officials tasked with computing the offender's sentence used the wrong formula, and failed to fix the error even after learning about it. Id. at 1352-53. Accordingly, the offender had a cause of action under § 1983 for denial of liberty without due process. Id. at 1359. Here, in contrast, DOC had no right to overrule, ignore, or second guess the court's amended judgment and sentence in Scott's case. See Dress v. Wash. State Dep't of Corr., 168 Wn. App. 319, 322, 279 P.3d 875 (2012) ("[DOC] is not authorized to either correct or ignore a final judgment or sentence that may be erroneous"). Scott's claim that the amended judgment and sentence was illegal, a contention rejected by a superior court, does not change this result.

Scott also asserts that the DOC defendants should be held liable for the tort of false imprisonment. "[A] jail is liable for false imprisonment if it holds an individual for an unreasonable time after it is under a duty to release the individual." Stalter v. State, 151 Wn.2d 148, 155, 86 P.3d 1159 (2004). "An imprisonment enacted pursuant to a valid legal process and court sentence is not false imprisonment." Blick v. State, 182 Wn. App. 24, 33, 328 P.3d 952 (2014). But the DOC defendants cannot be held responsible for refusing to release Scott from a lawfully imposed judgment and sentence. And no authority supports Scott's claim for civil damages based on double jeopardy.

C. Dismissal of Clark County Defendants

Scott argues that the trial court erred by dismissing her claims against Hayes and the Clark County under the doctrine of prosecutorial immunity. We disagree.

Whether a prosecutor enjoys absolute immunity for challenged conduct depends on the nature of the function performed. Kalina v. Fletcher, 522 U.S. 118, 127, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997). "It is well established that a prosecutor who acts within the scope of his or her duties in initiating and pursuing a criminal prosecution is absolutely immune from liability." Tanner v. City of Federal Way, 100 Wn. App. 1, 4, 997 P.2d 932 (2000) (citing Imbler v. Pachtman, 424 U.S. 409, 427, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). However, "[a]bsolute immunity means that a prosecutor is shielded from liability even when he or she engages in willful misconduct." McCarthy v. County of Clark, 193 Wn. App. 314, 337, 376 P.3d 1127 (2016). This immunity extends to both the State and the entity employing the prosecutor. Janaszak v. State, 173 Wn. App. 703, 718-19, 297 P.3d 723 (2013). "This immunity is warranted to protect the prosecutor's role as an advocate because any lesser immunity could impair the judicial process." McCarthy, 193 Wn. App. at 337.

Scott alleged damages arising from Hayes's decision (1) to file a CrR 7.8 motion to amend her judgment and sentence to correct an error of law and (2) to move to revoke her SSOSA on false pretenses in an attempt to bully her into dropping her appeal. But the filing of pleadings and motions on behalf of the State in a criminal proceeding are core prosecutorial functions entitling Hayes to absolute immunity.

Relying on Kalina, Scott argues that prosecutorial immunity does not apply in this situation because Hayes's sworn motion to revoke her SSOSA was "littered with actual lies." In Kalina, the U.S. Supreme Court held that a state prosecutor was not entitled to prosecutorial immunity in a § 1983 action when she acted outside the scope of her duties by personally vouching for the truth of facts set forth in an affidavit attached to an

10

information charging a man with burglary. 522 U.S. at 121-22. By vouching for the truth of the matters stated in the affidavit, the prosecutor placed herself in the position of a complaining witness, rather than an advocate. Id. at 129-31. Kalina is distinguishable because Hayes did not personally attest to the veracity of facts in a charging document. Hayes's motion to revoke the SSOSA was based on a report from Scott's CCO identifying conditions Scott had not completed.

The trial court did not err in dismissing Scott's claims against the Clark County defendants on the basis of prosecutorial immunity.[9]

D. Leave to Amend Complaint

Scott challenges the trial court's denial of her motion to amend her complaint to add Judge Stahnke as a party. "After an answer is served, CR 15(a) permits a plaintiff to amend a complaint only by leave of court, which shall be freely given when justice so requires." Rodriguez, 144 Wn. App. at 729. The court may consider whether the new claim is futile or untimely. Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 142, 937 P.2d 154 (1997). We will reverse a trial court's ruling on a request to amend only if the trial court abused its discretion. Nepstad v. Beasley, 77 Wn. App. 459, 468, 892 P.2d 110 (1995). "[T]he trial court's failure to explain its reason for denying leave to amend may amount to an abuse of discretion." Rodriguez, 144 Wn. App. at 729.

Here, after determining that the trial court had jurisdiction, it concluded that "justice does not require adding Judge Stahnke to the case as a party" because "such addition would be futile because of the doctrine of judicial immunity." This ruling was not an abuse

---

[9] Because we conclude that prosecutorial immunity barred Scott's claims, we need not address the Clark County defendants' argument that dismissal was also proper for failure to validly state a Monell claim. See Tanner, 100 Wn. App. at 4 ("[p]rosecutors are immune from section 1983 federal claims as well as state common law claims").

of discretion. Judges are absolutely immune from suits in tort that arise from acts performed within their judicial capacity. Lallas v. Skagit County, 167 Wn.2d 861, 864, 225 P.3d 910 (2009). "The purpose of this immunity is not to protect judges as individuals, but to ensure that judges can administer justice without fear of personal consequences." Taggart v. State, 118 Wn.2d 195, 203, 822 P.2d 243 (1992)). "Judicial immunity applies even when a judge acts in excess of his or her jurisdiction, as long as there is not a clear absence of jurisdiction." Lallas, 167 Wn.2d at 864.

Scott argues that Judge Stahnke is not entitled to judicial immunity because the court lacked jurisdiction to amend her sentence.[10] This is so, she contends, because her original sentence was correct, the trial court was misinformed that her sentence contained a clerical error, and the prosecutor filed its motion well after the 90-day period under which DOC may challenge legal errors under RCW 9.94A.585(7).

Here, the State filed a CrR 7.8(a) motion before Judge Stahnke to correct what it believed was a clerical error in Scott's judgment and sentence. CrR 7.8 grants the court jurisdiction to correct a clerical error in one of its orders "at any time." Although the State later conceded that the error was not clerical, the judge's ruling, even if erroneous, did not constitute a clear absence of jurisdiction. See Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978) (unless acting in the clear absence of all jurisdiction, a judge will not be deprived of immunity even if the action was erroneous, malicious, or in excess of authority). The trial court did not abuse its discretion by denying Scott leave to amend her complaint.

---

[10] Although Scott frames this issue as a challenge to subject matter jurisdiction, her argument appears to address jurisdiction more broadly.

Scott also assigns error to the trial court's decision to dismiss her claims with prejudice. She contends that "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, the complaint could not be saved by any amendment." In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005). Because we conclude that no set of facts would entitle Scott to relief under these circumstances, dismissal with prejudice was appropriate.

E. Findings of Fact and Conclusions of Law

Citing CR 56(h), Scott argues that the trial court erred in failing to enter written findings of fact or conclusions of law regarding any of its orders. Scott is incorrect. CR 56(h) provides that "[t]he order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered." Here, the parties did not move for summary judgment dismissal of Scott's claims under CR 56. Rather, they moved for dismissal under CR 12(b)(6). As such, "[t]he court need not find that any support for the alleged facts exists or would be admissible in trial as would be its duty on a motion for summary judgment." Contreras v. Crown Zellerbach Corp., 88 Wn.2d 735, 742, 565 P.2d 1173 (1977).

Affirmed.

_Andrus, A.C.J._

WE CONCUR:

_Coburn, J._                    _Bowman, J._

13